## In re RICHARD.

### (District Court, E. D. North Carolina. May 23, 1899.)

1. BANKRUPTCY—SUSPENSION OF STATE INSOLVENCY LAWS.

   The national bankruptcy law supersedes state insolvency laws; and, upon an adjudication in bankruptcy, the court of bankruptcy takes jurisdiction of the estate of the bankrupt and all matters pertaining thereto, and will administer the same to a final settlement.

2. SAME—DISSOLUTION OF EXISTING LIENS.

   Where an insolvent debtor, being sued on several claims, appeared in court and acknowledged the validity of the claims, and consented to the entry of judgment thereon, and in one case consented to the separation of an indivisible claim into two causes of action, to bring it within the jurisdiction of a justice of the peace, and to the entry of judgment thereon, and executions were issued and levied on the defendant's property, and he made an agreement with the creditors as to the custody and sale of the property, *held*, that the liens of such executions were dissolved by the debtor's adjudication in bankruptcy within four months after the bringing of the suits, and the trustee was entitled to the property or its proceeds.

3. SAME—EXEMPTIONS.

   Where a bankrupt selected from his personal property articles amounting in value to the sum exempted by the law of the state, but, by agreement with the trustee, allowed these articles to be sold with the rest,—that course being for the benefit of the estate, in that it made the stock, as a whole, more salable,—*held*, that the trustee should allow to the bankrupt, as his exemption, out of the proceeds of the sale, a sum of money equal to the value of the goods originally selected.

4. SAME—PROVABLE DEBTS.

   Where, in a contest between the trustee in bankruptcy and an execution creditor of the bankrupt, it is adjudged that the lien of the execution previously levied on property of the bankrupt was dissolved by the adjudication in bankruptcy, because sought and permitted in fraud of the bankruptcy act, but there was no actual fraud in the judgment on which it was based, the creditor, if he will surrender the amount collected by means of his execution, may then prove his claim against the estate as an unsecured creditor.

**In Bankruptcy.** On review of rulings of referee in bankruptcy. The referee in bankruptcy found as follows:

(1) That on the 12th of December, 1898, the said Gerson Richard was insolvent; his property not being sufficient in value to pay one-half of his indebtedness. That he was for some time before that date constantly pressed for money, his obligations in many instances either protested or returned by the bank, and many claims against him having been in the hands of local attorneys. That he was frequently attempting to borrow money. That on the said 12th of December, 1898, ten summonses were issued by one John P. Tillery, a justice of the peace of Rockymount, at the instance of the respondents, including Augustus Wright, against the said Gerson Richard, returnable at 2 o'clock p. m., same day. The hearing of said actions was commenced about 2:30 p. m.; the plaintiffs in the same being represented by John M. Sherrod, Esq., and J. H. Baker, attorneys at law. No witnesses were sworn, but judgments were entered in all the cases, except the case of Wright, upon the debtor's acknowledgment of the claims sued upon. In some of the cases there were verified accounts filed, and in some notes were offered in evidence, but no proof of signature was introduced. The justice states that he rendered these nine judgments upon acknowledgment of their correctness by the said Richard. (2) That, after these, came up for trial the tenth action, which was in favor of Augustus Wright, whose account was indivisible, and for $238.10, contracted as of October 1, 1898, payable, as Richard contended, four months after date; the summons being for $200, interest and costs, and the $38.10 being remitted by the said Wright. Richard denied the said plaintiff's right to recover. A jury was demanded by Richard. He deposited $3 for the fees. The jury was drawn. The case was continued until the next day, December 13th, at 3 p. m., and Richard's attorney left the place of trial. (3) Executions were issued December 12, 1898, on the nine judgments rendered that day, and levied on Richard's goods. (4) Then, without the knowledge of Richard's attorney, the justice of the peace that evening, about night (December 12th), entered a nonsuit in the said case of Wright against Richard, at instance of Wright's attorney, and then issued two summonses on said indivisible account, each for $119.05 and interest and costs, of which summons Richard accepted service, and judgments were rendered and executions issued on the same, which executions were also levied on said goods. The $3 was refunded to Richard. The two judgments in favor of Wright were not resisted by Richard. After the levy of the eleven executions as aforesaid, it was agreed between the respondent's attorneys and Gerson Richard that the executions should be returned "Indulged," which was done, and the liens were abandoned, and that the said Richard should execute a trust deed of all his property to B. H. Bunn, law partner of John M. Sherrod, to secure the said eleven judgments; and said instrument was accordingly drafted that night by Messrs. Sherrod and Baker. (5) That the next day (December 13, 1898) the plan of executing a trust deed was abandoned, and eleven other executions were issued on said judgments; and were levied on said debtor's property, which was permitted to remain in the custody of the clerk of said Richard under the written agreement and circumstances mentioned in the evidence. In regard to said levies and the liens thereof (the judgments aforesaid having been begun within four months before the filing of the petition in bankruptcy), the referee finds from all the evidence which is herewith sent (a) that said liens were obtained and permitted while said defendant was insolvent, and that their existence and enforcement will work a preference; (b) that such liens were sought and permitted in fraud of the provisions of the bankrupt act; and (c) that said levies were not open, notorious, and unequivocal. (6) That during all these proceedings in the justice's court, and until the closing of the stores on the 16th of December, 1898, by the respondents, they had reasonable ground to believe that said Richard was insolvent, and that the acquisition of said liens would give them a preference over other creditors. (7) That said Richard having acknowledged the nine claims on which judgments were first rendered, and having consented to the division of the Wright claim after the remittitur, and making no defense to the two actions brought after the nonsuit on the first, and having signed the written agreement (a copy of which is annexed to respondent's answer) in reference to the cus-

tody and sale of his goods, the referee finds that he facilitated the proceedings against him, as to time and method, and for these additional reasons permitted the acquisition of said liens. (8) That the facts in regard to the bankrupt's personal property exemptions are truly stated in the bankrupt's petition, dated January 26, 1899 (a copy of which, marked "Z," is herewith filed), and in the trustee's report, dated January 18, 1899, to which no objections have been filed. (9) That the articles of personal property which the trustee caused to be allotted to Gerson Richard as his personal property exemptions amounted at cost prices to $833.66⅔, and their true value was this sum less 40 per cent.; that is, $500. These articles, being sold with the other goods, added at least $500 to the price that the whole brought; and it made out, in the aggregate, a more salable stock, and it was better for creditors that all the goods be sold together as was done. It appears from a list of the articles assigned as a personal property exemption that there are many standard articles, and it is to be presumed, as a matter of fact, that the debtor would select the best things in the lot. (10) That the respondents received the amounts from sale of goods December 13th, 14th, 15th, and 16th that are stated in article 10 of the reply.

### Conclusions of Law.

(1) That the alleged liens of December 13, 1898, are dissolved by the adjudication of bankruptcy, and are null and void as to the trustee, and as to the creditors other than the respondents. (2) That, in the matter of the allotment of the personal property exemptions of Gerson Richard, it appears from the trustee's report that the allotment was made with substantial regularity. It was not necessary for the trustee to follow the state law on this subject. (3) That out of the said $1,775, proceeds of sale, now in the hands of the trustee, he shall pay $500, in lieu of said personal property exemptions, to the H. B. Claffin Company; the claim for the same having been transferred by Gerson Richard to his wife, Mrs. C. Richard, a free trader, and by her to the said company, as set out in the trustee's supplemental report. (4) That the order made December 22, 1898, directing the United States marshal to seize the goods, should not be revoked, and that neither the bankrupt property, nor the proceeds of sale thereof, should be given up by this court, except in the way of administering the same under the bankrupt law. (5) That the money received by respondents as stated in reply article 10 must be repaid to the trustee by them, and they cannot deduct the expenses incurred by them in proceedings that were in fraud of the bankrupt law.

Jacob Battle, for bankrupt and H. B. Claffin Co.
Baker & Sherrod, for other petitioners.

PURNELL, District Judge (after stating the facts). The bankrupt law should be, and is, eminently fair and just to all parties. That there is opposition to its operation is to be expected, until creditors cease to demand their full dues,—a "pound of flesh when it is so nominated in the bond,"—and to gain advantage over other creditors who, from improvident credits, are similarly situated. The purpose of the law is, further, to establish throughout the United States a uniform system, to supersede diverse state insolvent or assignment laws. It is enacted in accordance with an express constitutional authority, and is the supreme law. Except as provided in the act (30 Stat. 544), such as section 6, which provides that the passage of the act shall not affect the exemptions allowed where the bankrupt has his domicile, the state law is suspended and inoperative after an adjudication in bankruptcy. The bankrupt court takes jurisdiction of the estate and all matters pertaining thereto, and will administer the same to a final settlement. In re Bininger, Fed. Cas. No. 1,420; In re Hathorn, Id. 6,214; In re Wallace, Id. 17,094; In re Washington Marine Ins. Co., Id. 17,246; In re Smith, 92 Fed. 135;

In re Gutwillig, Id. 337; In re Etheridge Furniture Co., Id. 329; Davis v. Bohle, Id. 325; and opinion of Judge Baker in Re Smith, 92 Fed. 135. The authorities to this effect are overwhelming, and a study of them is commended to attorneys who seem to persistently shut their eyes to the principles involved, or, to satisfy pugnacious clients, make a Quixotic fight to have state laws prevail in the courts of bankruptcy when the same conflict with the act of congress and the constitution of the United States.

The finding of facts by the referee, after a careful examination of the record, is affirmed.

Respondents contend:

1. That their liens are valid because they are liens under judgments obtained without collusion before bankruptcy. The finding of the referee as to the facts is a complete answer, under the act, to this contention.

2. "Property, or the fund arising from the sale thereof, should be restored to the constable, to be paid out according to priorities of executions as they came into his hands." This would set at naught the bankrupt law and the general principles above enunciated. That the contention is untenable is too manifest to admit of argument.

3. As against these judgments, the bankrupt is not entitled to personal property exemptions, or, if any, only to a per cent. of funds as property allotted. Section 6 of the bankrupt act provides that the exemptions shall not be affected by the passage of the act, and the state law governs. In re Stevenson, 93 Fed. 789. The constitution of North Carolina (article 10, § 1) exempts from sale under process $500 of personal property, to be selected by the debtor, and this is exempt from sale under final process whether set apart or not. Albright v. Albright, 88 N. C. 238, and cases cited; Cowan v. Phillips, 122 N. C. 70, 20 S. E. 961. There is nothing in the record which can be held as a waiver, or that exemption was not demanded in apt time. Pate v. Harper, 94 N. C. 25. The burden is on the party making the objection. The bankrupt selected goods, as he had a right to do, and these were valued at their cash price. It is not shown this was not fair. By consent, he allowed them to be sold with the other goods,—this course being, in the judgment of the trustee, for the benefit of the estate; and it is not shown that the goods selected did not sell for $500, or that they do not bear that proportion to the balance of the stock, or caused the stock of goods to sell for that much more than it would otherwise have sold for if these goods had been taken therefrom. The court will not overrule a referee, or set aside the acts of the trustee, upon argument, without evidence showing reasonable cause for such action. In contemplation of the law, the officers provided for in chapter 5, § 33 et seq., are to do the detail work in cases in bankruptcy, and the judge of the district court cannot be expected to look through voluminous depositions and records for errors which are not plainly pointed out.

4. "Moneys recovered by the constable and paid out should not be required to be refunded. He has fully accounted for them."

Such judgments, under the finding of facts, are dissolved, and all rights acquired under them. Section 67, subsec. c, cls. 1–3.

5. "The judgment creditors, if liens are not valid, should be permitted to prove their claims as other creditors." The referee asks advice of court "as to whether the respondents, having failed to establish their liens, can now prove their claims as unsecured creditors, if the other creditors or the trustee shall refuse to accept a surrender of the alleged preferences after this decision by the referee." There is no denial of respondents' "debt," as defined in section 1 (11), nor allegations that there was any actual fraud in obtaining the judgments,—only such fraud of the bankrupt law as vitiates any lien acquired. The debts are due. Respondents have received and can receive no preference, lien, or advantage by reason of or under the judgments of the magistrate's court. They are nullities in this court to this extent, but they establish the debt. Section 63, in prescribing what debts may be proved, provides "(5) for provable debts reduced to judgment after the filing of the petition and before the consideration of the application of the bankrupt for discharge, less costs incurred," etc. Respondents have attempted to gain an advantage and failed. These proceedings, as far as gaining a lien, are void. The respondents must pay the cost in the state court, and refund what has been collected under these proceedings. They are still creditors of the bankrupt, after a fruitless fight. They have gained no advantage and acquired no lien, but are still creditors unsecured. Should they be punished by a loss of their debts because they were vigilant? The law does not so provide. It favors vigilance, especially when untainted with fraud. The cases cited under the act of 1867 do not apply. In most of them the creditor had gained a preference which he would not surrender, or made himself party to an actual fraud; and such would be the law under section 57 of the act of 1898. Respondents have received no preference and been parties to no actual fraud, but only to such fraud of the operation of the bankrupt act as vitiates their proceedings. They are creditors, and, on a surrender of the amount collected of the bankrupt estate, are entitled to prove their claims as other unsecured creditors.

The conclusions of law by the referee, except as herein modified, are affirmed. The claims sent up since the report of the referee will be returned to that officer, who will proceed to settle the estate accordingly. It is so ordered.