LOUISVILLE TRUST CO. v. MARX et al.

(District Court, D. Kentucky. December 23, 1899.)

JURISDICTION OF COURTS OF BANKRUPTCY—SUITS BY TRUSTEES.

A district court of the United States, as a court of bankruptcy, has jurisdiction of a bill in equity by a trustee in bankruptcy to set aside an alleged fraudulent preference made by the bankrupt. Section 23b of the bankruptcy act, providing that "suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt might have brought or prosecuted them if proceedings in bankruptcy had not been instituted," is a limitation upon the jurisdiction of the circuit courts of the United States, and does not affect the jurisdiction in bankruptcy conferred upon the district courts by section 2 of the act.

In Equity. On demurrer to a bill in equity filed by the Louisville Trust Company, as trustee in bankruptcy of the firm of L. Marx & Bro., against Leopold Marx and others.

Charles S. Grubbs, for complainant.

D. I. Heyman, O. A. Wehle, and Kohn, Baird & Spindle, for defendants.

EVANS, District Judge. The complainant, the Louisville Trust Company, is the trustee in bankruptcy of the firm of L. Marx & Bro., who in January, 1899, were adjudged by this court to be bankrupts. As such trustee it brought this suit in equity in this court to set aside certain alleged fraudulent preferences made by the bankrupts within four months before the adjudication.

Assuming that the bill of complaint states a cause of action under the bankrupt act, the defendants severally demur to it upon the sole ground that this court has no jurisdiction to hear and determine such a suit. This brings up, of course, the question which has been so widely discussed, as to the proper construction of section 23 of the act. The jurisdiction has been maintained in cases like the following: In re Sievers (D. C.) 91 Fed. 366; In re Smith (D. C.) 92 Fed. 135; Carter v. Hobbs (D. C.) 92 Fed. 594; In re Richard (D. C.) 94 Fed. 633; In re Newberry (D. C.) 97 Fed. 24; and Robinson v. White (D. C.) 97 Fed. 33,—but has been denied in Heath v. Shaffer (D. C.) 93 Fed. 647; Camp v. Zellars, 36 C. C. A. 501, 94 Fed. 799; Goodier v. Barnes (C. C.) 94 Fed. 798; Hicks v. Knost (D. C.) 94 Fed. 625; Burnett v. Mercantile Co. (D. C.) 91 Fed. 365; and Mitchell v. McClure (D. C.) 91 Fed. 621. The section about which there has been such marked difference of opinion is in this language, namely:

"Sec. 23. (a) The United States circuit courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants. (b) Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant. (c) The United States circuit courts shall have concurrent jurisdiction with the courts of bankruptcy, within their respective territorial limits, of the offenses enumerated in this act."

Viewed in connection with the other provisions of the statute, it seems to me to be manifest that the language of the section refers alone to the jurisdiction of the circuit courts, except as to criminal matters, and to the "suits" brought therein; and it is not altogether impossible that efforts at its construction have been made somewhat more difficult by the lettering of the clauses of the section. Clauses "a" and "c," in express terms, except as to criminal offenses, relate to the circuit courts only; and the "suits" referred to in clause "b" should be limited to those "suits" which may be brought as provided in the first clause. There is nothing in clause "b" which makes it either necessary or appropriate to conclude that congress meant its language to have a wider scope, and certainly nothing to show that it was meant to include courts nowhere mentioned, or even remotely alluded to, either by name or designation, so far as civil actions are concerned. It does not seem to me that any rule governing the interpretation of statutes warrants the notion that anything in the general language of clause "b" meant to enlarge the scope of what was otherwise evidently

the purpose of the section as clearly indicated by clause "a"; and, unless the meaning of clause "b" is greatly expanded beyond that of its associate clauses, this must be the construction. That clause of the section put in between clauses "a" and "c" must take color and meaning from them, and be limited by them. This would be the natural result, and seems to me certainly to have been the intention of congress. While the original jurisdiction of the circuit courts is thus provided for and limited, it is by no means said to be exclusive; and, when we go to other provisions of the act to ascertain the jurisdiction of this court, it will be found to be manifestly concurrent with that of the circuit courts, as far as the latter goes. It is mainly found in section 2, which, for the purposes of this opinion, reads as follows, namely:

"Sec. 2. That the courts of bankruptcy as hereinbefore defined, viz. the district courts of the United States, * * * are hereby made courts of bankruptcy, and are hereby invested within their respective territorial limits * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, * * * to (1) adjudge persons bankrupt * * *; (2) allow claims," etc.; "(3) appoint receivers," etc.; "(4) arraign, try and punish bankrupts, officers and other persons," etc.; "(7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided; and * * * (15) make such orders, issue such process and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act."

It is in section 23 provided that the circuit courts may also have jurisdiction of certain suits; but this is only a concurrent power, and but for this provision the jurisdiction of the district courts would be exclusive. It seems to me that this is all that was intended, and that there was no purpose whatever to give, and then entirely take away, the powers given the bankrupt court in section 2 respecting jurisdiction in equity. This seems to derive much support from the fact that congress appears to have had so fixed a purpose as to concurrent jurisdiction that it expressly provides for it in criminal cases by clause "c." This will afford a proper solution of the question, and we can see no occasion for bestowing equity jurisdiction for "determining controversies in relation to the estates of the bankrupts," or "for entering judgments," as provided in such express terms in clauses 7 and 15 of section 2, for any purpose except such as gives potency to the contention which sustains the right to try cases like this in this court. This certainly is an action for determining a controversy in relation to the bankrupt's assets, provided for in section 2, cl. 7. The language of that section is broad and comprehensive, and when so construed as to give force to all provisions of the statute, and to harmonize real or fancied conflicts, it seems to me to require the restriction of the language of section 23 to the jurisdiction of the circuit courts, and to suits brought therein, even if its proper and natural meaning did not so demand, as I think it does. Its real purpose and effect was to give the circuit courts concurrent jurisdiction with the district courts in certain "suits," and in criminal cases growing out of the bankrupt act. It may always aid somewhat in the interpretation

of this statute to recall the fact that part of the legislative history of it is that the two houses of congress, in trying to perfect it, were proceeding upon radically different lines, and that at the last moment there was need of a somewhat hasty adjustment of differences to secure any legislation at all. The results of this are apparent at several points. Those who have the burden of the practical administration of the law would find its efficiency very much weakened if the bankrupt courts should be found to be impotent in their efforts speedily and promptly, through the equity jurisdiction given them by section 2, to "reduce to money and distribute the bankrupt's assets, and to determine controversies in relation thereto." If, instead of having this power, their efforts are to be suspended in cases like this, until, by the more or less slow or long protracted proceedings in a state court, the fraudulent practices of bankrupts and favored creditors shall be attacked and set aside, we shall not only have nothing like a uniform system of bankruptcy, but we shall have one the efficiency of which is greatly and unnecessarily impaired. Except for proceedings like this, what could have been the object of giving jurisdiction in equity to the district courts? Clauses 7 and 15 of section 2 cannot be made effective, except by suits in equity. The bankrupt law was designed for prompt action all along the line, not only in the bankrupt court, but in courts of supervisory and appellate jurisdiction. See sections 18, 24, and 25. But if section 23 applies to the district court, otherwise than in respect to criminal matters, the very cases which will the most loudly call for prompt, vigorous, and effective action will be the ones which cannot receive it; for, instead of administering the bankrupt's estate in the bankrupt court, and there determining questions in relation thereto, and reducing the assets to money, its jurisdiction, in large measure, will be ancillary only to that of a foreign and possibly inharmonious forum. True, these considerations should have no weight if the proper construction of section 23 require otherwise, but they are strong reasons why the construction should not be hastily given. Without, however, going further into reasons for it, my opinion is that the district court has jurisdiction of this action, and that the demurrers should be overruled.