## In re ROLLINS BOOT SHOP.

District Court, N. D. Georgia, Gainesville Division. February 18, 1928.

No. 67.

1. **Homestead** ⬠58—**Homestead exemption in Georgia must be in property, and not money.**

Under the law of Georgia, a homestead exemption must be claimed in property, real or personal, and not in cash, unless there is no other property, and in that case, or where it is necessary to sell property to sever the homestead, the cash must be reinvested.

2. **Bankruptcy** ⬠400(3)—**Where homestead exemption of bankrupt in Georgia is allowed in cash from proceeds of property, it must share in shrinkage from present fair value.**

Where each member of a bankrupt mercantile partnership in Georgia claimed a part of his homestead exemption in cash from the firm merchandise, it was a consent to sale of the stock by the trustee, and the exemptions must be reduced pro rata, to correspond with the shrinkage from present fair value.

3. **Bankruptcy** ⬠400(3)—**Present fair value of bankrupt property from which exemption is claimed is not fixed by original cost nor general appraisement.**

Where present fair value is not agreed on by trustee and homesteader before sale, nor fixed by an appraisement to which both are parties, original cost does not fix it, nor is the general appraisement of the estate conclusive; but the fair value is to be ascertained from all proper evidence produced before the referee.

In Bankruptcy. In the matter of the Rollins Boot Shop, a partnership, bankrupts. On review of order of referee. Reversed, with directions.

Joseph G. Collins, of Gainesville, Ga., for bankrupts.

J. L. Hargrove, of Atlanta, Ga., and C. L. Williamson, of Gainesville, Ga., for objecting creditors.

SIBLEY, District Judge. The partners, Rollins and Jordan, each, in their bankruptcy schedules, claimed a $1,600 homestead under the Georgia Constitution, to be set apart partly in specific personal property, and the remainder to be cash from the partnership stock of merchandise. The stock had been inventoried by the trustee at its cost price, amounting to about $5,800; this also being the value placed on it in the bankruptcy schedule. It was appraised for sale, however, at only $1,700. The trustee construed these claims for an exemption of cash as a consent by the bankrupt to the sale of the stock. A sale was had, the stock bringing $2,110. This sum being insufficient to pay the remainder of the homesteads in full, it was prorated by the trustee between the two claims of homestead. The referee, on the authority of In re Arnold (D. C.) 169 F. 1000, held that the exemptions must stand their proportion of the shrinkage on sale from the inventory value, being about 65 per cent., and should be reduced accordingly. The evidence before the referee showed that the stock had been damaged by fire; that the inventory made by the trustee was at original cost, with no effort by him to fix the present value. The referee's decision is under review.

[1] The trustee takes no title to exempt property. His only power over it is to value it and set it aside. The bankruptcy court has no jurisdiction to administer it otherwise without the bankrupt's consent. On the other hand, the bankrupt has no right to demand an exemption in cash. The Georgia laws contemplate a provision for the debtor's family in permanent property. The kinds of property that can be exempted are particularly specified in the "short homestead," and do not include money. Code Ga. § 3416. The constitutional homestead here involved is more general, being "realty or personalty, or both, to the value in the aggregate of sixteen hundred dollars." Code Ga. § 3377. The homesteader, in his application, must state "out of what and whose property exemptions are claimed." Code Ga. § 3378, subsec. 1. If indivisible town realty must be sold in order to sever the homestead, the cash arising from the sale must be invested.

Code Ga. § 3389. And investment is required if the estate be in cash to begin with. Code Ga. § 3391. "In no case shall the allowance of cash without such investment be a valid exemption." Id. Such investment is not within the province of the bankruptcy court, and must be left to the state tribunal, should the bankrupt or his family desire so to perfect the exemption. It is evident, however, that the bankrupt has no right to demand a cash exemption unless the estate be originally in cash, or unless it is necessary to sell indivisible property to sever the exemption, or unless a sale has been wrongfully made, against the will of the bankrupt, before his exemption is set apart.

[2, 3] In the present case, each bankrupt claimed cash out of the stock of merchandise. This was properly interpreted to mean a request for and a consent to a sale thereof. Since, as has been shown, cash cannot be demanded, such a consent sale implies that the bankrupt, as the seller of his interest in the property, will stand his part of any loss resulting from the sale. This was held in this court (In re Arnold, supra), and in other courts (In re Crum [D. C.] 221 F. 729; In re Richards [D. C.] 94 F. 633; In re Ansley Brothers [D. C.] 153 F. 983; In re Moore [D. C.] 274 F. 645). But the bankrupt's interest in the property sold is not ascertained by comparing the homestead value to which he is entitled with the *original cost* of the whole property. He is entitled to claim property of $1,600 in value at the time the property is set apart, to be judged of by the trustee, subject to review by the referee. This may be very different from its cost. The goods here in question had been damaged by fire. Nor is the fair value established by a trustee's sale, for such sales being forced, are often at a sacrifice. It is the value which a willing purchaser and seller would likely agree upon in an unforced sale of the identical property. An appraisal is not conclusive, unless joined in by the bankrupt. The appraisement here was shown by the sale to have been too low. All these things are but evidence on the question of fair value. The ratio of the value to be exempted to the fair value of the whole item of property sold is the bankrupt's interest in the sale, and measures his proportion of the loss, if the property sells for less than its fair value. In the Arnold Case the inventory value is mentioned as the standard from which the loss is to be measured, but that was only because in that case the inventory was regarded as being the fair value. In the present case it affirmatively appears by the trustee's

own testimony that the inventory was made at cost, and without reference to present value. Whenever a homestead interest is to be sold with other property of the estate, it is desirable either to ascertain the value of the property in advance of the sale, or to agree with the bankrupt as to his proportion of interest therein. In the present case it is necessary, under all the evidence that may be produced, to ascertain the actual fair value of the property sold, in order to ascertain the proportion of loss, if any has been sustained by the sale, that should be borne by the exemptions.

The judgment is reversed, with direction that this be done.