WILLIAMS ET AL. *v.* AUSTRIAN ET AL., TRUSTEES.

No. 850. Argued April 10, 11, 1947.—Decided June 16, 1947.

*Milton Pollack* argued the cause for petitioners. With him on the brief were *Emery H. Sykes, Horace R. Lamb, Lewis L. Delafield, John F. Dooling, Jr.* and *William Piel, Jr.*

*Carl J. Austrian* argued the cause for respondents. With him on the brief were *Saul J. Lance* and *Isadore H. Cohen.*

*Acting Solicitor General Washington, Roger S. Foster, Robert S. Rubin* and *Arnold R. Ginsburg* filed a brief for the Securities and Exchange Commission, as *amicus curiae,* urging affirmance.

644

MR. CHIEF JUSTICE VINSON delivered the opinion of the Court.

Section 2 (a) of the Bankruptcy Act[1] confers upon all bankruptcy courts "such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act . . . to . . . (7) Cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided . . ." The exception has reference to § 23 (b), which requires that "Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this Act had not been instituted, unless by consent of the defendant, except as provided in sections 60, 67, and 70 of this Act."[2] Congress, however, in the Chandler Act of 1938 declared the inapplicability of § 23 in reorganization proceedings under Chapter X; and it is upon the signifi-

---

[1] The Chandler Act of 1938, 52 Stat. 840, generally revised the Bankruptcy Act of 1898, 30 Stat. 544, as amended. Section 2 in its original form was substantially as set out in the text except that jurisdiction was conferred "in bankruptcy proceedings," instead of "in proceedings under this Act." The change in language was made in 1938.

[2] Section 23 in full provides as follows: "JURISDICTION OF UNITED STATES AND STATE COURTS.—a. The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this Act, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"b. Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this Act had not been instituted,

cance of this action to the jurisdiction of the federal courts that this case turns.[3]

Respondents were appointed trustees for the Central States Electric Corporation, a Virginia Corporation in reorganization in the District Court of the United States for the Eastern District of Virginia. Following an investigation under § 167[4] of the Act, respondents were authorized to institute suit against petitioners, who are past and present officers and directors of the debtor and others having connection therewith. This suit was then filed against petitioners in the District Court of the United States for the Southern District of New York, alleging a conspiracy to misappropriate corporate assets and asking an accounting and other relief. There was no allegation of diversity and jurisdiction was rested upon "the Constitution of the United States (Article I, Section 8, Clause 4, and Article III, Section 2), the Act of Congress relating to Bankruptcies (U. S. Code Title 11), and . . .

---

unless by consent of the defendant, except as provided in sections 60, 67, and 70 of this Act."

Section 23 (a), as originally enacted, related to the circuit courts, which were abolished in 1911 by § 289 of the Judicial Code. 36 Stat. 1167. Formal amendment to § 23 (a) was made in 1926. 44 Stat. 664.

[3] Chapter X, containing the reorganization provisions, superseded § 77B. Section 102 of Chapter X provides: "The provisions of chapters I to VII, inclusive, of this Act shall, insofar as they are not inconsistent or in conflict with the provisions of this chapter, apply in proceedings under this chapter: *Provided, however,* That section 23, subdivisions h and n of section 57, section 64, and subdivision f of section 70, shall not apply in such proceedings unless an order shall be entered directing that bankruptcy be proceeded with pursuant to the provisions of chapters I to VII, inclusive. For the purposes of such application, provisions relating to 'bankrupts' shall be deemed to relate also to 'debtors', and 'bankruptcy proceedings' or 'proceedings in bankruptcy' shall be deemed to include proceedings under this chapter."

[4] The investigation was made pursuant to the decision in *Committee for Holders* v. *Kent,* 143 F. 2d 684 (1944).

the provisions of Section 24 (1), (19) of the Judicial Code . . . ."

The District Court dismissed for lack of jurisdiction;[5] but the Circuit Court of Appeals reversed, holding that since the governing provisions of § 23, to which the "except" clause of § 2 (a) (7) refers, were suspended in Chapter X proceedings, jurisdiction to hear this plenary suit could be rested upon the general language of § 2. Other alleged grounds for jurisdiction were not considered. 159 F. 2d 67 (1946).

1. Petitioners construe "proceedings under this Act," within which the jurisdictional grant contained in § 2 is confined, as extending only to matters proper for summary disposition,[6] and interpret the suspension of § 23 in Chapter X cases, without providing a substitute therefor, as removing from the Act an affirmative grant to federal courts of jurisdiction to hear plenary suits, rather than as an action aimed at expanding that jurisdiction.[7] But these views rest, in the main, upon what we think is an erroneous appraisal of the history of §§ 2 and 23.

Section 2 is substantially identical with § 1 of the Bankruptcy Act of 1867,[8] *Babbitt* v. *Dutcher,* 216 U. S. 102,

---

[5] Petitioners also based their motion to dismiss on the applicable statute of limitations; but the District Court indicated that if there had been jurisdiction to proceed, the motion to dismiss would otherwise have been denied, because of factual issues which first required determination.

[6] "Proceedings under this chapter," referred to in §§ 101 and 102 of Chapter X, is similarly construed.

[7] According to this view there would, in Chapter X cases, be no provisions in the Bankruptcy Act conferring jurisdiction upon federal courts to hear plenary suits other than in §§ 60, 67, and 70. A reorganization trustee would be left, where he could, to take advantage of the ordinary grounds for federal jurisdiction.

[8] 14 Stat. 517. Section 1 gave the bankruptcy courts original jurisdiction "in all matters and proceedings in bankruptcy" which extended "to all cases and controversies arising between the bankrupt and any

107 (1910); and cases dealing with that Act, while recognizing that certain suits brought by bankruptcy assignees should proceed in plenary, rather than summary, fashion, held that § 1 gave jurisdiction to the bankruptcy courts to proceed in both ways.[9] And although certain aspects of a bankruptcy proceeding could be handled only by the court in which the adjudication was had, § 1 conferred upon all bankruptcy courts jurisdiction to hear plenary suits brought by bankruptcy assignees against adverse claimants or against debtors of the bankrupt.[10]

*Lathrop* v. *Drake*, 91 U. S. 516 (1875), viewed the jurisdiction of the district courts in this manner and, we think, contrary to the statements later made in *Bardes* v. *Hawarden Bank*, 178 U. S. 524 (1900), and *Schumacher* v. *Beeler*, 293 U. S. 367 (1934), upon which petitioners rely, considered the jurisdiction of the district courts over plenary suits to rest upon § 1 of the 1867 Act.[11]

---

creditor or creditors who shall claim any debt or demand under the bankruptcy; to the collection of all the assets of the bankrupt . . . ."

[9] *Sherman* v. *Bingham*, 21 Fed. Cas. 1270, No. 12,762 (1872); *Goodall* v. *Tuttle*, 10 Fed. Cas. 579, No. 5,533 (1872). The requirement of plenary proceedings, though not expressly appearing in the Act, was well recognized. *Marshall* v. *Knox*, 16 Wall. 551 (1872); *Smith* v. *Mason*, 14 Wall. 419 (1871).

[10] *Sherman* v. *Bingham*, 21 Fed. Cas. 1270, No. 12,762 (1872); *Goodall* v. *Tuttle*, 10 Fed. Cas. 579, No. 5,533 (1872).

[11] The references to the Act contained in the discussion of the jurisdiction of the district courts obviously referred to § 1; and *Sherman* v. *Bingham*, 21 Fed. Cas. 1270, No. 12,762 (1872), which expressly based upon § 1 the jurisdiction of the district courts to hear plenary suits, was cited with unreserved approval. The pertinent passage in the *Lathrop* case is as follows:

"The language conferring this jurisdiction of the district courts is very broad and general. It is, that they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy. The various branches of this jurisdiction are afterwards specified; resulting, however, in the two general classes before mentioned. . . . Each court within its own district may exercise the

648

Section 2 of the Bankruptcy Act of 1898 substantially repeated the broad grant of jurisdiction contained in § 1 of the 1867 Act. The bankruptcy courts were given "such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings . . . ."[12] But § 2 (7), while granting to all bankruptcy courts jurisdiction to collect and to hear contro-

---

powers conferred; but those powers extend to all matters of bankruptcy, without limitation. . . . But the exclusion of other district courts from jurisdiction over these proceedings does not prevent them from exercising jurisdiction in matters growing out of or connected with that identical bankruptcy, so far as it does not trench upon or conflict with the jurisdiction of the court in which the case is pending. Proceedings ancillary to and in aid of the proceedings in bankruptcy may be necessary in other districts where the principal court cannot exercise jurisdiction; and it may be necessary for the assignee to institute suits in other districts for the recovery of assets of the bankrupt. That the courts of such other districts may exercise jurisdiction in such cases would seem to be the necessary result of the general jurisdiction conferred upon them, and is in harmony with the scope and design of the act. The State courts may undoubtedly be resorted to in cases of ordinary suits for the possession of property or the collection of debts; and it is not to be presumed that embarrassments would be encountered in those courts in the way of a prompt and fair administration of justice. But a uniform system of bankruptcy, national in its character, ought to be capable of execution in the national tribunals, without dependence upon those of the States in which it is possible that embarrassments might arise. The question has been quite fully and satisfactorily discussed by a member of this court in the first circuit, in the case of *Shearman* v. *Bingham*, 7 Bank. Reg. 490; and we concur in the opinion there expressed, that the several district courts have jurisdiction of suits brought by assignees appointed by other district courts in cases of bankruptcy." 91 U. S. 516, 517–18.

[12] Section 2 created the courts of bankruptcy and invested them "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings . . . to . . . (7) cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided . . . ."

versies relating to the estate of the bankrupt, appended the words "except as herein otherwise provided." The exception had reference to § 23,[13] which, in the clause applicable to the district courts, provided that, unless by the consent of the defendant, suits by the bankruptcy trustee should be brought only in the courts where the bankrupt might have brought them if bankruptcy proceedings had not been instituted. In sharp contrast to the broad language of § 2 (7) and to the practice under the 1867 Act,[14] § 23, in the interest of litigants and witnesses, deliberately directed to the state courts most of a bankruptcy trustee's plenary suits.[15]

---

[13] *First Nat. Bank* v. *Title and Trust Co.*, 198 U. S. 280, 289 (1905); *Bryan* v. *Bernheimer*, 181 U. S. 188, 194 (1901); *Bardes* v. *Hawarden Bank*, 178 U. S. 524, 535 (1900). Section 23 (b), as originally enacted, provided: "Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant."

[14] "A construction of the statute of 1898 which would deprive the federal courts of jurisdiction of the suits in question [trustee's suit to recover property] would make the act of 1898 unprecedented among bankrupt acts." *In re Hammond*, 98 F. 845, 853 (1899).

[15] When S. 1035, which eventually became the Act of 1898, reached the House, the judiciary committee recommended striking out all after the enacting clause and substituting the committee's own bill. Section 23 of the House version, 31 Cong. Rec. 1781 (1898), survived both debate and conference action and became § 23 of the Act of 1898. In reviewing the bill preliminary to debate, the chairman of the House judiciary committee explained:

"The jurisdiction of State courts to try controversies between the trustees of bankrupt estates and parties claiming adverse interest is not in any way interfered with.

"Suits by the trustee shall only be brought in the courts where the bankrupt might have brought them except for the misfortune of his bankruptcy, unless by the consent of the proposed defendant.

"Under the last bankruptcy law the litigation incident to the settlement of estates was conducted almost wholly in United States

Some lower federal courts, however, immediately held that § 23 did not apply to suits brought to recover certain transfers of the bankrupt's property and, relying upon § 2, upheld the jurisdiction of federal courts.[16] *Bardes* v. *Hawarden Bank, supra,* checked this trend and gave full scope to the language of § 23. Suits to recover fraudulent transfers, like other plenary suits, were to be tried in the state courts. It was in the *Bardes* case unnecessary to explore the scope of § 2; for whatever the grant of jurisdiction there made, the interpretation given § 23 would have required the result reached. In any event, the construction of § 2, standing alone and without regard for the influence of § 23, as being confined to summary matters rested to a great extent upon a reading of *Lathrop* v. *Drake, supra,* with which, as has been indicated, we cannot agree.

Congressional reaction to the *Bardes* case was almost immediate. Wishing to allow the trustee to resort to federal courts in recovering fraudulent transfers and preferences, Congress in 1903 created exceptions to § 23 in favor of suits brought under §§ 60 (b) and 67 (e); [17] and, being doubly cautious, Congress also inserted in §§ 60 (b) and 67 (e) clauses giving any bankruptcy court jurisdiction to hear plenary suits brought under those sections.[18] It was explained at the time by the House judiciary committee

---

courts. The result was great inconvenience and much expense to a majority of the people interested in such litigation as principals, witnesses, and attorneys. Such will not be the effect under this bill. It is proper that such should not be the case, speaking generally, in behalf of the administration of justice." 31 Cong. Rec. 1785 (1898).

[16] *In re Woodbury,* 98 F. 833 (1900); *In re Hammond,* 98 F. 845 (1899); *Louisville Trust Co.* v. *Marx,* 98 F. 456 (1899).

[17] 32 Stat. 798–9.

[18] *Id.* at 799–800. Congress likewise amended § 70 (e), but by an oversight the exceptions made to § 23 were not correspondingly extended. The omission was corrected in 1910. 36 Stat. 840. See H. Rep. No. 511, 61st Cong., 2d Sess. 6 (1910).

that § 2 (7) would probably have been ample basis for the jurisdiction of the bankruptcy courts, and that it was only to remove all doubt that §§ 60 (b) and 67 (e) had also been amended.[19]

Where §§ 60 (b), 67 (e), and 70 (e) were not involved, the *Bardes* rule continued to be applied where plenary proceedings were required, as in cases relating to property ad-

---

[19] "Section 9: Under the law of 1867, the Federal and State courts had concurrent jurisdiction of suits to recover property fraudulently or preferentially transferred. *Bardes* v. *Bank of Hawarden* (Ia.), 178 U. S., 524, has so construed section 23 b, of the law as to deny such jurisdiction to the district courts, save with the consent of the proposed defendant. In commercial centers this amounts to a denial of justice, the calendars of the State courts being years behindhand; while, growing out of *Bardes* v. *Bank,* have come decisions which have crippled the administration of the law to a marked degree. (See in re *Ward* (Mass.), 5 Am. B. R., 215; *Mueller* v. *Nugent* (Ky.), 105 Fed., 581; this latter, however, recently reversed by the Supreme Court.) There is a very general demand for a return to the policy of the law of 1867. *Were it not for section 23 b, section 2 (7), would probably confer ample jurisdiction on the district courts.* The change in section 23, b, proposed by the bill simply excepts from the operation of it all suits which can, under the specific words of the law, be brought to recover property, and this merely by referring to the three sections under which alone such suits can be brought. *To remove all doubt,* also, sections 13 and 16 of the bill confer concurrent jurisdiction of all such suits on the State courts and the Federal district courts, by adding appropriate words to each of the three sections section 60 b, section 67 e, and section 70 e." H. Rep. No. 1698, 57th Cong., 1st Sess. 7 (1902). (Italics added.)

Substantially the same explanation was given on the floor of the House by Representative George W. Ray, chairman of the judiciary committee. 35 Cong. Rec. 6941, 6942 (1902).

Representative Ray, we note, was second ranking member of the judiciary committee at the time of the passage of the 1898 Act. It was that committee which drafted §§ 2 and 23 in substantially the form appearing in the 1898 Act. See note 15, *supra.* Representative Ray was also a member of the House conference committee, and it was in conference that the Act of 1898 was finally drafted and the serious differences between the House and Senate were resolved.

versely held [20] and suits upon choses in action belonging to the bankrupt's estate.[21] Left for summary disposition under § 2 were those proceedings in which the controversy related to property in the possession or constructive possession of the court or to property held by those asserting no truly adverse claim.[22]

From its inception, § 23 contained a clause seemingly mitigating the rigors of the jurisdictional requirements imposed. A trustee, "unless by consent of the proposed defendant," could bring suit only in courts where the bankrupt could have sued. Subsequent to the *Bardes* case some lower federal courts held that, even with the consent of a defendant, some independent ground for federal jurisdiction must be present.[23] The conflict was resolved in *Schumacher* v. *Beeler, supra.* It was held that in § 23 Congress had exercised its bankruptcy powers to confer upon federal courts jurisdiction conditioned upon a defendant's consent [24] and that, given consent, no independ-

---

[20] *Harris* v. *First Nat. Bank,* 216 U. S. 382 (1910).

[21] *Kelley* v. *Gill,* 245 U. S. 116 (1917); *In re Roman,* 23 F. 2d 556 (1928); *Lynch* v. *Bronson,* 177 F. 605 (1910).

[22] *Whitney* v. *Wenman,* 198 U. S. 539 (1905); *Mueller* v. *Nugent,* 184 U. S. 1 (1902); *Bryan* v. *Bernheimer,* 181 U. S. 188 (1901); *White* v. *Schloerb,* 178 U. S. 542 (1900). "But in no case where it lacked possession, could the bankruptcy court . . . adjudicate in a summary proceeding the validity of a substantial adverse claim. In the absence of possession, there was under the Bankruptcy Act of 1898, as originally passed, no jurisdiction, without consent, to adjudicate the controversy even by a plenary suit." *Taubel-Scott-Kitzmiller Co.* v. *Fox,* 264 U. S. 426, 433–34 (1924).

[23] *Matthew* v. *Coppin,* 32 F. 2d 100, 101 (1929); see *Stiefel* v. *14th Street Realty Corp.,* 48 F. 2d 1041, 1043 (1931); *Coyle* v. *Duncan Spangler Coal Co.,* 288 F. 897, 901 (1923); *Piano Co.* v. *First Wisconsin Trust Co.,* 283 F. 904, 906 (1922); *De Friece* v. *Bryant,* 232 F. 233, 236 (1916); *McEldowney* v. *Card,* 193 F. 475, 479 (1911). Contra: *Beeler* v. *Schumacher,* 71 F. 2d 831 (1934); *Toledo Fence & Post Co.* v. *Lyons,* 290 F. 637, 645 (1923).

[24] "The Congress, by virtue of its constitutional authority over bankruptcies, could confer or withhold jurisdiction to entertain such

ent ground for federal jurisdiction was required. The case turned upon the meaning of the consent clause in § 23. The remarks offered concerning § 2 were unnecessary and, in any event, were based upon the similar statements made in *Bardes* v. *Hawarden Bank, supra.*

The *Beeler* decision, like that in the *Bardes* case, does not direct a conclusion that § 2, in the absence of § 23, confers only a summary jurisdiction; for it was because of the limitations of § 23 that plenary suits had been excluded from the otherwise broad scope of § 2.[25] Cases construing the latter in the presence of the overriding prohibitions of

suits and could prescribe the conditions upon which the federal courts should have jurisdiction. . . . Exercising that power, the Congress prescribed in § 23b the condition of consent on the part of the defendant sued by the trustee." *Schumacher* v. *Beeler,* 293 U. S. 367, 374 (1934).

[25] The cases decided under the 1867 Act and referred to in notes 10–11, *supra,* recognized the broad scope of language similar to that of § 2; and cases arising under the 1898 Act and decided before *Bardes* v. *Hawarden Bank,* 178 U. S. 524 (1900), based upon § 2 the jurisdiction of the federal courts to entertain plenary suits to recover property adversely held. See note 16, *supra.*

Later cases have recognized the overriding consequence of § 23. "Section 2, clause 7, confers upon the court of bankruptcy jurisdiction to 'cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided.' But § 23–b prohibits the trustee (with exceptions not here applicable) from prosecuting, without the consent of the proposed defendant, a suit in a court other than that in which the bankrupt might have brought it, had bankruptcy not intervened." *Kelley* v. *Gill,* 245 U. S. 116, 119 (1917). "There is plainly a controversy in relation to the estate of a bankrupt, and subdivision 7 of section 2 would confer jurisdiction if it were not for the limiting words, 'except as herein otherwise provided.' " *Lynch* v. *Bronson,* 160 F. 139, 140 (1908). See also *Lowenstein* v. *Reikes,* 54 F. 2d 481, 485 (1931) (dissenting opinion), and the analysis of the interplay of §§ 2 and 23 in Ross, *Federal Jurisdiction in Suits by Trustees in Bankruptcy,* 20 Iowa L. Rev. 565 (1935), which was written after the *Beeler* decision.

§ 23 are not persuasive in a situation where, for the first time, § 23 has been declared inoperative.

2. To accept petitioner's reading of § 2 would produce consequences affording peculiar explanations for the express elimination of § 23 in Chapter X cases. For one thing, there would be destroyed the consent basis for federal jurisdiction of plenary suits brought by a trustee; [26] and, for another, diversity jurisdiction would depend upon the citizenship of the trustee rather than upon that of the debtor. The latter is a formal change of no obvious value, and the former puts a greater limitation upon the jurisdiction of a Chapter X court than has been placed upon an equity receivership, 77B, or ordinary bankruptcy court, a result in obvious contrast to discernible trends in reorganization law.

The committee reports and Congressional debates do not elaborate upon the decision to eliminate § 23,[27] and the hearings reveal only that § 23 was one of several sections which the National Bankruptcy Conference desired to eliminate, and which might be held applicable if not expressly deleted.[28] However, the action occurred in the

---

[26] *Schumacher* v. *Beeler*, 293 U. S. 367 (1934). See p. 652 and note 24, *supra*. In *Tilton* v. *Model Taxi Corp.*, 112 F. 2d 86 (1940), a 77B case, the jurisdiction of the district court to entertain a plenary suit was based upon consent.

[27] The Senate report said in regard to the committee's suggested amendments to § 102: "The proposed amendment amplifies the provision with reference to applicability so as to leave no doubt that the provisions of chapters I to VII are alone to be deemed applicable, except where inconsistent or in conflict with the provisions of the chapter." S. Rep. No. 1916, 75th Cong., 3d Sess. 6 (1938).

The amendments to § 102 were agreed to without comment on the floor of the Senate, and were similarly accepted by the House. 83 Cong. Rec. 8697, 9103, 9107, 9110 (1938).

[28] The recommendation was made by Mr. John Gerdes. See Hearings before Subcommittee of the Committee on the Judiciary, U. S. Senate, on H. R. 8046, 75th Cong., 2d Sess. 77 (1938). Mr. Gerdes

process of developing a workable reorganization technique and should be viewed in that context. While an equity receivership court had dependent jurisdiction, regardless of diversity or other independent grounds for federal jurisdiction, to hear plenary suits related to the estate of the

did not at this time explain the reasons for the suggested suspension of § 23. He stated as follows:

"Chapter X is not intended to be self-sufficient. All provisions of the general bankruptcy act are applicable to proceedings under chapter X, except such provisions are inconsistent with express provisions in chapter X. Some provisions of the general act are clearly inconsistent with the corporate reorganization provisions and are therefore inapplicable. Other provisions are clearly applicable. However, there are certain sections which by their nature permit of doubt as to whether or not they are applicable. Section 64 of the general bankruptcy act, for example, provides for a fixed priority in the payment of claims. This section deals solely with unsecured claims, only unsecured claims being affected by bankruptcy. To apply it in corporate reorganizations—where secured as well as unsecured claims are dealt with—would cause great confusion. To make it clear that section 64 does not apply, we propose this amendment which expressly provides that 64 shall not be applicable to chapter X. The priorities under chapter X would therefore be those used in equity receiverships. That is the present practice under 77B, which expressly provides that section 64 shall not be applicable. When we adopt the same provision here we merely adopt the practice which is already in existence under section 77B.

"In this enumeration of sections and subsections which are not applicable, we include only those as to which there may be reasonable doubt. The sections which we enumerate are 23, 57 (h), 57 (n), 64, and 70 (f). We propose that section 102 be amended to provide that these sections and subsections shall not. be applicable to proceedings under chapter X."

A representative of the Association of the Bar of the City of New York also listed § 23 among those sections which "have no applicability to a reorganization procedure." *Id.* at 37. And the spokesman for the Philadelphia Court Plan Committee suggested amending § 23 to give ordinary bankruptcy courts more effective powers to deal with fraudulently transferred or concealed assets. *Id.* at 26.

debtor,[29] under § 77B, which made reorganization of non-railroad corporations a part of the bankruptcy scheme, it was believed in some quarters that § 23 would have its traditional effect upon the jurisdiction of federal courts to hear plenary suits, even though the reorganization court was given the "powers" of an equity receivership court.[30] Other commentators, thinking that § 77B should not provide a less efficient procedure than the equity receivership, considered § 23 inapplicable to 77B cases and regarded the reorganization courts as having jurisdiction to hear plenary suits.[31] The controversy had not been settled when congressional committees were considering the bill which became the Chandler Act of 1938, and such a background for the suspension of § 23 in Chapter X cases obviously raises no inference of a desire to restrict, rather than to expand, the jurisdiction of the federal courts.

To interpret the elimination of § 23 in Chapter X cases as restricting the access of the trustee to the federal courts would not be in harmony with other provisions contemporaneously written into Chapter X and defining anew the position and functions of the reorganization trustee. The appointment of a disinterested trustee was made mandatory in appropriate cases,[32] his qualifications were pre-

---

[29] *White* v. *Ewing*, 159 U. S. 36 (1895); see *Riehle* v. *Margolies*, 279 U. S. 218, 223 (1929).

[30] Finletter, Principles of Corporate Reorganization 185–87 (1937).

[31] 2 Gerdes, Corporate Reorganizations 1465 (1936). The courts had not been squarely faced with the problem at the time Congress was considering the 1938 revision of the Bankruptcy Act. *Matter of United Sportwear Co.*, 28 Am. B. R. (N. S.) 456 (1935), had suggested that § 23 was applicable, while the contrary intimation is evident in *Thomas* v. *Winslow*, 11 F. Supp. 839 (1935). See also Note, 49 Harv. L. Rev. 797 (1936).

[32] § 156. The requirement of a disinterested trustee was one of the major substantive additions which Chapter X made to § 77B. S. Rep. No. 1916, 75th Cong., 3d Sess. 19 (1938).

scribed,[33] and upon him were devolved functions aimed at eliminating the abuses of previous reorganization schemes.[34] It was his duty to prepare the reorganization plan,[35] and there were conferred upon him investigative powers and duties [36] which not only contemplated the discovery of wrongs done the debtor by its former management, but also insured the "prosecution of all causes of action" which might "add to the assets of corporations in reorganization." [37] These provisions were "of paramount importance in the revision of section 77B." [38] and are hardly indicative of a congressional desire to restrict the trustee's choice of a forum in which to litigate plenary suits. On the contrary, the conclusion more in accord with the purposes of Chapter X and with the pivotal position in which the trustee was placed [39] is that Congress

---

[33] §§ 156 and 158.

[34] The important defects of 77B reorganizations and the remedy provided in Chapter X are analyzed in S. Rep. No. 2084, 75th Cong., 3d Sess. 1–3 (1938).

[35] §§ 167 (6) and 169.

[36] Section 167 in part provides: "The trustee upon his appointment and qualification—

"(1) shall, if the judge shall so direct, forthwith investigate the acts, conduct, property, liabilities, and financial condition of the debtor, the operation of its business and the desirability of the continuance thereof, and any other matter relevant to the proceeding or to the formulation of a plan, and report thereon to the judge;

"(2) may, if the judge shall so direct, examine the directors and officers of the debtor and any other witnesses concerning the foregoing matters or any of them;

"(3) shall report to the judge any facts ascertained by him pertaining to fraud, misconduct, mismanagement and irregularities, and to any causes of action available to the estate . . . ."

[37] S. Rep. No. 1916, 75th Cong., 3d Sess. 29 (1938).

[38] Ibid.

[39] "These functions of the independent trustee appointed in the larger cases are difficult to overemphasize. . . . Investors must be afforded a 'focal point' for organization." H. Rep. No. 1409, 75th Cong., 1st Sess. 43 (1937).

intended by the elimination of § 23 to establish the juris-
diction of federal courts to hear plenary suits brought by
a reorganization trustee, even though diversity or other
usual ground for federal jurisdiction is lacking.

The decision of the Circuit Court of Appeals is in entire
harmony with the foregoing considerations. The lan-
guage of § 2, in its ordinary sense and no longer limited by
§ 23, easily comprehends the present type of suit; and so to
hold directly and effectively subserves Congressional de-
sires as revealed in the plain policy of Chapter X and in the
express elimination of § 23, which has, since its enact-
ment in 1898, been viewed as a sharp restriction upon the
jurisdiction theretofore exercised by bankruptcy courts
and as a strong preference for state courts.[40] Since all
reorganization courts are the objects of the jurisdiction
conferred by § 2,[41] the District Court for the Southern Dis-
trict of New York has jurisdiction to hear the present suit,
which is brought by reorganization trustees and which
charges misappropriation of the assets of a Chapter X
debtor.[42] "This seems to be the only logical conclusion to

[40] "The Bankruptcy Act of 1898, in respect to the matters now
under consideration, was a radical departure from the act of 1867,
in the evident purpose of Congress to limit the jurisdiction of the
United States courts in respect to controversies which did not come
simply within the jurisdiction of the Federal courts as bankruptcy
courts, and to preserve, to a greater extent than the former act,
the jurisdiction of the state courts over actions which were not dis-
tinctly matters and proceedings in bankruptcy." *Bush* v. *Elliott*,
202 U. S. 477, 479–80 (1906). And see pp. 649 and 650, notes 14–15,
*supra*.

[41] Section 1 (10) defines the courts of bankruptcy as follows:
" 'Courts of bankruptcy' shall include the district courts of the United
States and of the Territories and possessions to which this Act is
or may hereafter be applicable, and the District Court of the United
States for the District of Columbia"; *Babbitt* v. *Dutcher*, 216 U. S.
102 (1910). And see § 2 (a) (20) of the Bankruptcy Act.

[42] Our conclusion is not changed by the language of § 23 (a), which
as drawn in 1898, 30 Stat. 544, 552, was designed to grant a limited

be derived from the fact that § 23 has no application under Chapter X." [43]

3. Respondents in the alternative argue that the equity receivership powers conferred by § 115 [44] include jurisdiction to hear plenary suits and that all reorganization courts may exercise the jurisdiction so conferred. Petitioners would, in any event, confine the effects of § 115 to the reorganization court in which the reorganization petition has been approved. We need not pass on these contentions; for, assuming that § 115 is jurisdictional [45]

---

jurisdiction to circuit courts over "controversies at law and in equity," as distinguished from "proceedings in bankruptcy," and which seems only to have recognized the rule existing under the 1867 Act that certain bankruptcy matters were the exclusive concern of the bankruptcy court. If "proceedings" as used in § 23 (a) denoted those instances in which summary jurisdiction was proper, to find that "proceedings" in § 2 has no such precise meaning simply exemplifies the variety of ways in which "proceedings" has been employed in the bankruptcy statute. Section 11 (e) authorizes trustees to institute "proceedings in behalf of the estate upon any claim" and refers to "any proceeding, judicial or otherwise." And §§ 60 (b), 67 (e) and 70 (e) speak of "proceedings" in connection with plenary. In Chapter X itself, §§ 101 and 102 refer to "proceedings under this chapter." This term must extend to plenary suits, for otherwise § 23, which deals only with plenary suits, would not be suspended at all. Significant too is that "bankruptcy proceedings" in § 2 was in 1938 changed to "proceedings under this Act" in order that the jurisdiction granted by § 2 would extend to "proceedings" under the new debtor relief chapters, including Chapter X.

[43] 6 Collier on Bankruptcy 673 (14th ed. 1947.)

[44] Section 115 provides: "Upon the approval of a petition, the court shall have and may, in addition to the jurisdiction, powers, and duties hereinabove and elsewhere in this chapter conferred and imposed upon it, exercise all the powers, not inconsistent with the provisions of this chapter, which a court of the United States would have if it had appointed a receiver in equity of the property of the debtor on the ground of insolvency or inability to meet its debts as they mature."

[45] The similar "powers" provision in § 77B has been viewed as non-jurisdictional. *In re Standard Gas & Electric Co.,* 119 F. 2d 658,

and that it extends only to the primary court, jurisdiction in the present case may still be rested upon § 2. That section, in the absence of § 23, supports the jurisdiction of all district courts to hear plenary suits brought by a reorganization trustee, a result consistent with the aims of Chapter X and with the elimination of a section which is itself applicable to all district courts. Congress could have carved out of § 23 only a narrow exception in favor of the court in which the reorganization proceedings are pending and thereby left unchanged the jurisdiction of other courts over a trustee's plenary suits. Limited exceptions are familiar in the history of § 23. But Congress went further and eliminated § 23 entirely in Chapter X proceedings. Because of the countrywide ramifications of corporate debtors placed in Chapter X reorganization, it is as usual as not for the trustee to resort to foreign jurisdictions for the disposition of plenary suits. Allowing the primary court to hear these suits will not change this situation, if it is true that the process of a reorganization court does not run nationwide in plenary cases.[46]

---

662 (1941); see *In re Prima Co.*, 98 F. 2d 952, 958 (1938). These cases were decided after the passage of the Chandler Act and considered § 23 fully applicable in pending 77B proceedings. In *Tilton* v. *Model Taxi Corp.*, 112 F. 2d 86 (1940), § 23 was considered applicable in § 77B proceedings so as to permit jurisdiction of the district court to be based upon a defendant's consent. And see *Thompson* v. *Terminal Shares*, 104 F. 2d 1 (1939), for a treatment of a similar provision contained in § 77. On the other hand, § 115 has been interpreted as jurisdictional. *In re Cuyahoga Finance Co.*, 136 F. 2d 18 (1943); see *Warder* v. *Brady*, 115 F. 2d 89, 93–94 (1940). Other courts have thought the suspension of § 23 in Chapter X cases would give the reorganization court jurisdiction to hear plenary suits. See *Clarke* v. *Fitch*, CCH Bankr. Law Ser. ¶ 53,805 (1942); *Tilton* v. *Model Taxi Corp.*, *supra* at 88.

[46] It has been so held. *In re Standard Gas & Electric Co.*, 119 F. 2d 658 (1941); *Bovay* v. *H. M. Byllesby & Co.*, 88 F. 2d 990 (1937); *United States* v. *Tacoma Oriental S. S. Co.*, 86 F. 2d 363 (1936); *Clarke* v. *Fitch*, CCH Bankr. Law Ser. ¶ 53,805 (1942).

Congressional policy would receive only limited recognition if the suspension of § 23 is interpreted as allowing the trustee access to only the appointing court and as restricting his access to all other district courts.[47]

4. Our holding is, of course, that Congress in 1938 extended the jurisdiction of the reorganization courts beyond that exercised by ordinary bankruptcy courts. Section 2 of the 1898 Act contained the broad language borrowed from § 1 of the Act of 1867. But the exception to § 2 (a) (7) acknowledged the overriding limitations of § 23, which was the embodiment of Congressional policy to exclude from the bankruptcy courts many of the trustee's plenary suits. That same meaningful section was expressly eliminated in 1938 in the process of perfecting a chapter of the Bankruptcy Act dealing with the distinctive and special proceedings in corporate reorganizations. *Cf. Continental Bank* v. *Rock Island R. Co.*, 294 U. S. 648, 676 (1935). This negation of long-standing policy should be given effect consistent with the aims of Chapter X and should not be hedged by judge-made principles not in accord with those aims. Congress need not document its specific actions in elaborate fashion in order to direct this Court's attention to statutory policy and pur-

---

[47] The Chapter X cases cited in note 45, *supra*, did not reach the question of whether courts other than the primary court would have jurisdiction to hear plenary suits where the latter had jurisdiction of such a suit but could not exercise it because of personal service or venue difficulties. Nor did Mr. Gerdes, who construed the suspension of § 23 as establishing, by way of § 115, the jurisdiction of the reorganization court to hear plenary suits. Gerdes, *Corporate Reorganizations: Changes Effected by Chapter X of the Bankruptcy Act*, 52 Harv. L. Rev. 1, 21 (1938). But it was his opinion even under § 77B, where the applicability of § 23 was left in doubt, that all reorganization courts, not just the domiciliary court, had jurisdiction to hear plenary suits brought by the trustee, even though the usual grounds for federal jurisdiction were lacking. 2 Gerdes, Corporate Reorganizations 1480, 1513–14, 1525–26 (1936).

662

pose. The failure to provide appropriate fanfare for the suspension of § 23 in Chapter X cases, and for the consequent expansion of federal jurisdiction, hardly invites our opinion as to the advisability of the action which Congress has taken. Judicial drives to limit the jurisdiction of federal courts should not lead to decision falling short of complete effectuation of statutory scheme. With the limitations of § 23 suspended, § 2 confers jurisdiction upon all reorganization courts to hear plenary suits brought by a Chapter X trustee.

5. Petitioners insist that certain consequences, which they term undesirable, will flow from this decision. It is said, for example, that the state courts will automatically be deprived of jurisdiction to hear a trustee's plenary suits. But whether or not this and other suggested consequences will follow we leave for consideration in cases presenting such issues for decision.

The decision of the Circuit Court of Appeals is

*Affirmed.*

Mr. Justice Frankfurter, with whom Mr. Justice Jackson joins, dissenting.

On the surface this appears to be merely a bankruptcy case raising technical questions of federal jurisdiction. But the answers to these questions have far-reaching import. They involve the distribution of judicial power as between United States and State courts, and thus concern federal-state relations generally. More immediately, inasmuch as the allowable scope of the business of the federal courts is in controversy, a proper disposition of the case bears upon the quality of the work of those courts and of this Court in particular.

The Court makes a shift in the distribution of judicial power between State and federal courts which has prevailed for half a century. Such a break with the past is

not required by what Congress has written nor by any inference drawn from disclosed Congressional policies. On the contrary, I believe that the result reached is repelled by every consideration relevant to the proper construction of the statutory materials by which the jurisdiction of the federal courts is to be determined.

In 1867 Congress granted jurisdiction to the then lower federal courts over suits on claims owing to one whose estate was administered in bankruptcy, though the claims were based wholly on local law and were devoid of any federal aspect which would give a federal court jurisdiction were the creditor not in bankruptcy. This was another one of those enactments of the Reconstruction period when the influences toward expansion of federal jurisdiction were at flood-tide. As part of the recession from this Reconstruction tendency Congress, in the Bankruptcy Act of 1898, withdrew from the federal courts suits that rested solely on local law even though they involved claims asserted on behalf of one whose estate was being administered in the bankruptcy court. By a tenuous process of implication the Court now concludes that Congress, through the Chandler Act of 1938, enlarged federal jurisdiction in one aspect of the bankruptcy law, though neither the terms of the legislation, nor its context, nor its legislative history, nor considerations of policy heretofore suggested, call for such construction, while the history and structure of the legislation, its judicial interpretation, regard for congruity in finding meaning, and the larger claims of the federal judicial system, support a different reading of the statute. The large assumptions of the decision are that by indirection and without manifested design Congress reversed its prevailing policy of limiting federal jurisdiction and preserving a proper balance between federal and State courts; that Congress deviated from a principle of our federalism especially respected in recent times, according to which claims arising under State

law shall be tried under local trial procedure in the local courts; that Congress has departed from a settled policy of fifty years uniformly applicable in bankruptcy proceedings and which now continues as to all other proceedings in bankruptcy, although this established policy of leaving local claims to the State courts does not at all interfere with those aims for effective reorganization through use of the bankruptcy power which gave rise to Chapter X.

1. The facts in this case are not in dispute. The Central States Electric Corporation filed in the District Court for the Eastern District of Virginia a voluntary petition for reorganization under Chapter X of the Bankruptcy Act. With the consent of the reorganization court, respondents, as trustees, brought this suit in the District Court for the Southern District of New York on behalf of the Corporation for an accounting and damages against its officers and directors for alleged fraud and mismanagement. The District Court found want of jurisdiction, but was reversed by the Circuit Court of Appeals for the Second Circuit. 159 F. 2d 67. This Court now affirms the Circuit Court of Appeals and holds that a Chapter X trustee may bring this plenary suit *in personam* in a federal district court not the reorganization court, although neither diversity of citizenship nor other ground of federal jurisdiction exists.

No doubt Congress could authorize such a suit. See *Schumacher* v. *Beeler*, 293 U. S. 367, 374. Nor is there any doubt that Congress has not conferred upon the district courts the power to entertain such a suit by an ordinary bankruptcy trustee. Section 23 of the Bankruptcy Act specifically limits plenary jurisdiction to a few enumerated cases (of which this is not one), or where defendant consents. The Court finds, however, that Congress, by making § 23 inapplicable to Chapter X proceedings, opened all the federal courts to plenary suits by a Chapter X trustee. To determine the significance of the inap-

plicability of § 23 to Chapter X proceedings it is necessary to consider the affiliations between the Bankruptcy Act of 1898 and the Chandler Act. That in turn makes it necessary to examine the Act of 1898 in relation to its predecessor, the Act of 1867. These three enactments—the Bankruptcy Act of 1867, the Bankruptcy Act of 1898, and the Bankruptcy Act of 1938—are an interrelated process of legislation. The role of § 23 cannot be properly assessed merely by a textual reading, or by ascertaining its presence or absence in these three Acts. It must be placed in the context of the history of the Act of 1867 and of the Act of 1898, and the relation of that history to the aims of the Chandler Act.

2. To understand the full import of the Act of 1867, so far as now relevant, it will bear repetition that it reflected the expansionist trend in federal jurisdiction after the Civil War. Statute after statute gave to the federal courts jurisdiction over cases which had previously been left entirely to State tribunals, and this Court gave a broad construction to such statutes. The Bankruptcy Act of 1867 gave to all district and circuit courts concurrent jurisdiction over suits "by the assignee in bankruptcy against any person claiming an adverse interest" in the estate. Section 2 of the Act of March 2, 1867, 14 Stat. 517, 518. This provision was construed in *Lathrop* v. *Drake,* 91 U. S. 516. Mr. Justice Bradley, with characteristic clarity, distinguished between "jurisdiction as a court of bankruptcy over the proceedings in bankruptcy . . . [and] jurisdiction, as an ordinary court, of suits at law or in equity brought by or against the assignee in reference to alleged property of the bankrupt, or to claims alleged to be due from or to him." 91 U. S. at 517. But the terms of the Act were read to confer the latter jurisdiction on the lower federal courts. It is worth noting that Mr. Justice Bradley was a well-known exponent of expansive

666

federal jurisdiction. See, *e. g.,* his dissenting opinion in *Murdock* v. *Memphis,* 20 Wall. 590, 639.

3. The business which this broad construction of the Act of 1867 brought to the federal courts, together with that from other sources, led to the overburdening of their dockets, and inevitably of the dockets of this Court, and gave rise to the various movements for their relief. The history of the federal courts is to a considerable measure a history of the rise and fall of the scope of the jurisdiction given to them by Congress. Not to take account of these underlying factors in the construction of judiciary acts is to leave out the meaning in the interstices of the words of enactments. The Act of 1898 explicitly reveals the important shift in emphasis that had taken place within thirty years in the distribution between State and federal courts of the judicial power at the disposal of Congress. By 1898 the expansionist trend in federal jurisdiction had receded. The movement was toward a curtailment for an overburdened judiciary. The new Bankruptcy Act also showed the recession.

The Act of 1898 was not an amendment of the Act of 1867. The latter had been repealed by the Act of June 7, 1878, 20 Stat. 99, and for twenty years there was no federal bankruptcy Act. Accordingly, the 1898 Act is not to be read as a modification of an existing system. It established a scheme of bankruptcy administration where there was none. Its framers, of course, drew on history. They borrowed heavily from the Act of 1867. But a comparison of the jurisdictional sections of the 1898 Act with those of its predecessor reveals the great change in the attitude of Congress regarding the withdrawal of essentially local litigation from the State courts.

4. The shift in jurisdictional direction was duly respected when the Act of 1898 first came here for construction. Speaking for a unanimous Court, Mr. Justice Gray pointed out the marked structural differences be-

tween the Act of 1898 and that of 1867. The latter granted summary jurisdiction to the district court in § 1; plenary jurisdiction was conferred by § 2 on district and circuit courts concurrently of "suits, at law or in equity, between the assignee in bankruptcy and an adverse claimant . . . ." The Act of 1898 took over § 1 of the Act of 1867, and discarded § 2. Section 2 of the Act of 1898, derived from § 1 of the 1867 Act, confers only summary jurisdiction. Plenary jurisdiction was not conferred by the Act of 1898 on either the district or circuit courts except to the very limited extent granted by § 23.

Such was the construction of the Act of 1898 made almost contemporaneously with its enactment. *Bardes* v. *Hawarden Bank,* 178 U. S. 524. This construction was reaffirmed thirty-four years later by a unanimous Court, speaking through Mr. Chief Justice Hughes. *Schumacher* v. *Beeler, supra.*

5. This recognition of the drastic difference between the two Acts was not drawn merely from the inert words of the statutes. The words expressed the great differences of outlook, to which reference has been made, in regard to the transfer to the federal courts of what is essentially State litigation. This Court found the accent of the Act of 1867 to be on enforcement through "national tribunals." The matter was put quite plainly by Mr. Justice Bradley. "The State courts may undoubtedly be resorted to in cases of ordinary suits for the possession of property or the collection of debts; and it is not to be presumed that embarrassments would be encountered in those courts in the way of a prompt and fair administration of justice. But a uniform system of bankruptcy, national in its character, ought to be capable of execution in the national tribunals, without dependence upon those of the States in which it is possible that embarrassments might arise." *Lathrop* v. *Drake, supra,* at 518.

The outlook of the Act of 1898 as to proceedings not in bankruptcy "properly so called," *Bardes* v. *Hawarden Bank,* 178 U. S. 524, 533, was precisely the opposite. The emphasis was not on uniform enforcement through "national tribunals." Concern was with "the greater economy and convenience of litigants and witnesses" by leaving the determination of what intrinsically are merely local questions to the "local courts of the State." *Bardes* v. *Hawarden Bank, supra,* at 538. The Court again referred to this purpose of the 1898 Act when it gave full reconsideration to the legislation in *Schumacher* v. *Beeler, supra,* at 374. Emphasis was placed on the importance of ready accessibility to litigants afforded by local courts as against the inconvenience often entailed in bringing suitors to the federal courts, particularly in Western States. By reference to an earlier decision in which that consideration was treated as a controlling factor, the Court indicated a guiding principle in deciding questions of doubtful jurisdiction. See *Shoshone Mining Company* v. *Rutter,* 177 U. S. 505, 511, 513, cited in *Bardes* v. *Hawarden Bank,* at 538.

6. But we are now told that the *Bardes* and *Schumacher* cases misconstrued the Act of 1898 and its relation to that of 1867. The opinions of Mr. Justice Gray and Mr. Chief Justice Hughes were, according to this view, the products of misreading of judicial history and of a faulty analysis of the Act of 1898. Indeed, the foundation of the decision of the court below and of the argument at the bar of this Court is the claim that the construction placed upon the jurisdictional Act of 1898 by the *Bardes* and *Schumacher* cases was erroneous and to be rejected without compunction because, after all, merely the expression of erroneous *dicta.* Whether the discussion of the whole structure of an Act in order to find meaning for a particular part more immediately in litigation constitutes *dicta,* in the technical sense, is a nice exercise in legal

dialectics. The fact of the matter is that it was rationally relevant to the problem calling for adjudication in the *Bardes* cases to consider comprehensively the relation of the Act of 1898 to that of 1867. The view that was taken had the strength that comes not only from a unanimous Court but one contemporaneous with the legislation under scrutiny. And when the construction so placed upon an Act is reaffirmed thirty-four years later by a Court particularly strong in Justices who had had extensive experience in commercial law, it seems pretty late in the day to suggest that such weighty constructions by this Court are now to be found wrong.[1] The court below was driven to this drastic undertaking. For if § 2 of the Act of 1898 is the source solely of summary proceedings in bankruptcy, and jurisdiction for plenary suits, to a limited extent, was granted solely by § 23, the elimination of § 23 for purposes of Chapter X cannot serve to put into § 2 a plenary jurisdiction which was never there.

7. To reexamine the ground covered in the *Bardes* and *Schumacher* cases would, as it seems to me, be a work of supererogation. And so I will content myself with some observations pertinent to a proper view of the Act of 1898 as an entirety. The different features of an organic statute

---

[1] In view of his extensive commercial experience on matters of bankruptcy, any observation by Mr. Justice Brandeis carries great weight. But neither in *Kelley* v. *Gill,* 245 U. S. 116, nor elsewhere, did he state that § 2 of the Bankruptcy Act was a grant of plenary jurisdiction to all the courts and that § 23 merely operated as a curtailment of such grant. What is significant is that when, in *Schumacher* v. *Beeler, supra,* upon a full dress consideration of the problem, a contrary analysis was made, Mr. Justice Brandeis joined in it.

In another bankruptcy case, this Court said: "Only compelling language in the statute itself would warrant the rejection of a construction so long and so generally accepted, especially where overturning the established practice would have such far reaching consequences as in the present instance." *Maynard* v. *Elliott,* 283 U. S. 273, 277.

670

are not discrete parts. They cast light upon each other and illumine the whole. The Act of 1898 was read as it was by this Court because it established a comprehensive bankruptcy scheme. Sections 2 and 23 were read in combination, for they drew a sharp line between "proceedings in bankruptcy" and plenary "suits at law or in equity." For fifty years it has been the policy of Congress that a bankruptcy trustee bringing an action like that before us should sue in a State court. (This, of course, includes a federal court sitting in the State where there is diversity of citizenship. *Erie R. Co.* v. *Tompkins,* 304 U. S. 64; *Guaranty Trust Company* v. *York,* 326 U. S. 99.) Howsoever any section of the Act of 1898 might have been read had it existed by itself, on a view of the Act as an entirety it was settled that summary proceedings may be brought in any federal court, whereas plenary suits at law and in equity, distinguished as such from proceedings in bankruptcy, can be brought only where they could have been brought between the bankrupt and the opposing party had there been no bankruptcy. Section 2 had an intrinsically limited scope in its setting with § 23. The scope continues so limited and does not automatically expand because § 23 is *pro tanto* eliminated.

This jurisdictional differentiation was not a matter of Congressional whim or judicial technicality. It was easy for this Court to discern that the object of Congress "may well have been to leave such controversies to be tried and determined, for the most part, in the local courts of the State, to the greater economy and convenience of litigants and witnesses." *Bardes* v. *Hawarden Bank, supra,* at 538; *Schumacher* v. *Beeler, supra,* at 374. Congress saw good reason for not infringing on the ordinary jurisdiction of State courts where a suit is not really part of the bankruptcy proceedings. It chose to leave such litigation to the appropriate local practice and local rules

concerning jury trial in the local court, and at the same time to relieve thereby an overworked federal judiciary.

8. These important considerations touching the interplay of State and federal courts as well as the effective administration of justice in the federal courts have not lost force with time. Congress has continued to recognize their validity. As to bankruptcy trustees generally, the Act of 1938 continues to require that local suits like the present be brought in local courts. And in preparing for the Judiciary Committee of the House of Representatives an analysis of a predecessor bill introduced by Mr. Chandler, the National Bankruptcy Conference indicated that the considerations relevant to a proper distribution of business as between State and federal courts which underlay the restrictive policy of the Act of 1898 were more than ever applicable:

"In *Taubel-Scott-Kitzmiller Co.* v. *Fox,* 264 U. S. 426, Mr. Justice Brandeis declared obiter that Congress had power to confer on a bankruptcy court jurisdiction to adjudicate the rights of trustees to property not in possession of the bankruptcy court, either actually or constructively, but adversely held by a third person; but that Congress had not as yet exercised that power, or conferred such jurisdiction under any of the provisions of the Bankruptcy Act.

"The proceedings of Congress prior to the enactment of the Bankruptcy Law of 1898 show that the exercise of that power was deliberately withheld, because of the fear of flooding the federal courts with a large volume of new litigation. That motive is even stronger today [1936] than it was in 1898, and for that reason we do not consider it wise to enlarge the jurisdiction at this time; except as indicated to include receivers and so-called 'debtor proceedings.' " (Analysis of H. R. 12889, 74th Cong., 2d Sess., Committee Print p. 134.)

The indicated exceptions do not touch the jurisdiction here asserted. Yet the Court now concludes that as to Chapter X trustees Congress implied an exception so as to allow the trustee to sue in any federal district court in the country. If this be so, I see no escape from the conclusion that not only have the federal courts jurisdiction but the State courts no longer have it. Consideration of so destructive a consequence ought not to be postponed as though it were not immediately relevant to the proper construction of the legislation before us. If such suits are "bankruptcy proceedings"[2] within the jurisdictional grant of § 2—for it is necessary to find in some language an explicit grant of jurisdiction, and only § 2 is invoked—how can the bankruptcy aspect of the proceeding evaporate when it comes to "matters and proceedings in bankruptcy" as to which "The jurisdiction vested in the courts of the United States . . . shall be exclusive of the courts of the several States"? Rev. Stat. § 711, Judicial Code, § 256, 28 U. S. C. § 371. No support can be found for this shifting attribution of meaning to the same concept in the history of proceedings under the Act of 1867. To be sure, it was held under that Act that the State courts were not deprived of jurisdiction of such plenary suits. But that was so for the conclusive reason that the provision making federal jurisdiction exclusive in bankruptcy proceedings came into the law much later than the Act of 1867. Federal exclusiveness as to bankruptcy proceedings formally so-called was brought in by § 711 of the Revised Statutes of 1874. During the few years within which the Bankruptcy Act of 1867 coexisted with the requirement of exclusiveness of jurisdiction in the federal courts, the occasion did not arise for applying the provision excluding the State courts. But this Court was well aware of the problem and carefully put

---

[2] The Act of 1938 substituted "proceedings under this Act."

it to one side. See *Claflin* v. *Houseman,* 93 U. S. 130, 133, and *Wilson* v. *Goodrich,* 154 U. S. 640. Intrinsically, that question now presses for decision. If plenary suits are "bankruptcy proceedings" within § 2 of the Act of 1898, as the Court holds, how do they cease to be "proceedings in bankruptcy" as to which the federal courts have jurisdiction "exclusive" of the jurisdiction of the several States? [3] Only a forced disharmony can avoid the grievous consequences of a construction equally forced as to the relations between §§ 2 and 23 of the Act of 1898.

9. The Court finds a reversal in the policy of contraction of federal jurisdiction which began with the end of the Reconstruction era, found expression in cases culminating in *Gully* v. *First National Bank,* 299 U. S. 109, and undoubtedly furnished the momentum for the radical reversal of historic policy initiated by *Erie R. Co.* v. *Tompkins,* 304 U. S. 64. The Court extends the jurisdiction of the federal courts and, I cannot escape concluding, withdraws it from the State courts. It resolves whatever ambiguity may be found in § 102 of Chapter X by interpolating an exception which effects a break with the past and creates difficulties for the future. One would naturally expect that such an innovation in a matter of vital concern to the scope of federal jurisdiction, with its resulting effect upon the relations between the State and federal courts, would be explicitly stated and not depend for discovery upon intricate exegesis. One would suppose that some indication at least of Congressional awareness of the problem could be found. Diligence of counsel has not unearthed the remotest hint that such shift in jurisdiction was contemplated or that the need for it was asserted. Our own investigation has been equally fruitless. There is nothing in Chapter X, in its terms,

---

[3] Note that with regard to the exceptions to § 23 Congress deemed it necessary to confer jurisdiction on the State courts explicitly. See §§ 60 (b), 67 (e), and 70 (e) (3).

its antecedents, its history, its advocacy, that gives the remotest hint of a purpose calling for a different policy for reorganization trustees in this respect from other trustees in bankruptcy, or any intimation that the district courts, other than the particular reorganization court, would play a special role as to plenary suits in reorganization proceedings. Nor do the purposes of the Chandler Act bear upon this aspect of jurisdiction. Chapter X provided new facilities for reorganization of bankrupt estates and extended the scope of reorganizations. But it is hardly relevant to the purpose of easier and more comprehensive methods of reorganization to establish a claim through the federal courts rather than the State courts when the basis of recovery is State law, calling for application of State law and procedure. The Court draws support for its conclusion from the fact that other powers are conferred upon the Chapter X trustee which were not possessed by other bankruptcy trustees. But the powers to which attention is called are all explicitly conferred and are not derived by roundabout inference. And unlike the extension of jurisdiction here claimed, the additional powers conferred on the trustee all bear directly upon the very process of reorganization and the purposes for which Chapter X was designed.

The result has been spun largely out of words in the Act of 1898 by disregarding the controlling facts of its history and its long judicial and practical construction. The other source from which the argument is spun is the provision making § 23 inapplicable to proceedings under Chapter X. As we have seen, our decisions ruled that § 23 was not an exception to § 2 but an emphasis of the limited scope of § 2, together with a grant, of little importance, of consent jurisdiction.[4] If § 2 did not grant

---

[4] If the provisions rendering § 23 inapplicable to Chapter X proceedings also withdrew jurisdiction by consent, it is not an important

jurisdiction to the district courts over a plenary suit like the one before us, merely eliminating § 23 could add no new head of jurisdiction to § 2. And yet the Court finds that the purpose of making § 23 inapplicable to Chapter X was to throw all the federal courts open to plenary suits in Chapter X proceedings, although, as we have seen, not a clear expression either of such purpose, or an assessment of its consequences, is to be found in all the literature on this subject prior to this litigation. If a perfectly reasonable explanation can be given to the elimination of § 23 from Chapter X proceedings, we ought not lightly to attribute to Congress a radical change affecting the jurisdiction of the federal courts, without even an indirect mention of the need or desirability for such a change in the thousands of pages of legislative hearings, debates, and reports on the various bills leading up to the Chandler Act.

10. There is an adequate explanation for the provision making § 23 inapplicable that amply accounts for it, without using it as a springboard for a wholly unforeseen result out of harmony with established jurisdictional considerations.

The provision to make § 23 inapplicable did not appear in the earlier drafts of Chapter X and was not in the bill as it came from the House. It came into the Act through amendments proposed before the Judiciary Committee of the Senate by the National Bankruptcy Conference through its spokesman, Mr. John Gerdes. His statement is all we have by way of legislative history for

matter. In resolving what is at best a jurisdictional ambiguity a result which closes the doors of the federal courts to consenting parties is of minor consequence compared with opening wide the door to a jurisdiction theretofore barred to the federal courts, when Congress manifested no consciousness of such a new grant of jurisdiction.

676

the amendment.[5] It will be noted that Mr. Gerdes intimated nothing regarding the need for extending federal jurisdiction, nothing of the desirability of grant-

[5] See hearings before a subcommittee of the Senate Committee on the Judiciary, on H. R. 8046, 75th Cong., 2d Sess., p. 77:

"Chapter X is not intended to be self-sufficient. All provisions of the general bankruptcy act are applicable to proceedings under chapter X, except such provisions are inconsistent with express provisions in chapter X. Some provisions of the general act are clearly inconsistent with the corporate reorganization provisions and are therefore inapplicable. Other provisions are clearly applicable. However, there are certain sections which by their nature permit of doubt as to whether or not they are applicable. Section 64 of the general bankruptcy act, for example, provides for a fixed priority in the payment of claims. This section deals solely with unsecured claims, only unsecured claims being affected by bankruptcy. To apply it in corporate reorganizations—where secured as well as unsecured claims are dealt with—would cause great confusion. To make it clear that section 64 does not apply, we propose this amendment which expressly provides that 64 shall not be applicable to chapter X. The priorities under chapter X would therefore be those used in equity receiverships. That is the present practice under 77B, which expressly provides that section 64 shall not be applicable. When we adopt the same provision here we merely adopt the practice which is already in existence under section 77B.

"In this enumeration of sections and subsections which are not applicable, we include only those as to which there may be reasonable doubt. The sections which we enumerate are 23, 57 (h), 57 (n), 64, and 70 (f). We propose that section 102 be amended to provide that these sections and subsections shall not be applicable to proceedings under chapter X."

Another amendment, proposed to the Committee by Mr. Heuston, representing the Special Committee on Bankruptcy of the Association of the Bar of the City of New York, would have made inapplicable to Chapter X some thirty sections of the Act, among them § 23. "The proposed amendment excludes from a reorganization procedure all sections now expressly excluded by section 77B, subdivision (k), as well as many additional sections which have no applicability to a reorganization procedure." The statement makes no reference to plenary suits. "The sections excluded by the proposed amendment, include

ing plenary jurisdiction to all federal courts, nothing to the effect that a Chapter X trustee needed such greater freedom, nothing to indicate that the plan of that Chapter required a different rule as to ordinary plenary suits from that which was reaffirmed as to suits by other bankruptcy trustees. Yet the court below seemed to find in his statement warrant for its result. And it sought to reenforce its conclusion by appeal to an article by Mr. Gerdes elucidating the Chandler Act after its passage. Gerdes, Corporate Reorganizations: Changes Effected by Chapter X of the Reorganization Act, 52 Harv. L. Rev. 1, 21.

The Circuit Court of Appeals, it seems to me, finds in Mr. Gerdes' observations what he did not put into them. Nowhere is there the remotest suggestion that in this roundabout and undisclosed way he sought to throw all litigation by or against a reorganization trustee into federal courts, other than the reorganization court, because the federal courts might be a more convenient forum. He was concerned with various provisions, of which § 23 was one, which either were intrinsically in conflict with the new provisions of Chapter X or might be deemed to be in conflict with them. He used the terms "inconsistent" and "not applicable" interchangeably. He was concerned with removing all limitations in the existing Bankruptcy Act that were inconsistent with provisions in Chapter X, limitations which might impair the new scheme for bankruptcy reorganization. While Mr. Gerdes was not explicit as to possible inconsistency between § 23 and Chapter X, a controversy which had arisen in regard to § 23 prior to

those which would permit ancillary receiverships, the appointment of receivers before the approval of the petition . . . the bankruptcy provisions relating to priorities, etc." Hearings on H. R. 8046, before a subcommittee of the Senate Judiciary Committee, 75th Cong., 2d Sess., p. 37.

the Chandler Act, and with which he was thoroughly familiar, fully explains why Mr. Gerdes deemed it desirable that § 23 be made inapplicable to Chapter X.

The matter in controversy was this. Section 77B (a) granted the reorganization court the power possessed by an equity court with regard to equity receiverships. The question arose whether a 77B trustee could bring a plenary suit in the reorganization court without regard to diversity citizenship, as could an equity receiver in his home court. *White* v. *Ewing,* 159 U. S. 36. That the reorganization court had such jurisdiction and that § 23 was no bar, was Mr. Gerdes' view. But other bankruptcy specialists and some lower federal courts were of opinion that § 23 precluded such suits. Compare 2 Gerdes, Corporate Reorganizations, 1478, with Finletter, Principles of Corporate Reorganization, 186–87; and see *In re Standard Gas & Electric Co.,* 119 F. 2d 658; *Tilton* v. *Model Taxi Corp.,* 112 F. 2d 86; *In re Prima Co.,* 98 F. 2d 952.

To remove doubt as to this effect of § 23, namely its possible limitation upon the power of the reorganization trustee to sue in his home court, is the full purpose and scope of its elimination from Chapter X. It was not to give the reorganization trustee roving authority for plenary suits in all federal courts that § 23 was made inapplicable. It was a desire to remove the danger that § 23 might be deemed to deprive a reorganization trustee of the power which he ought to have in his reorganization court, that was implicit in the short statement of Mr. Gerdes on behalf of the National Bankruptcy Conference. It is this purpose that prevailed and it is this purpose that should be enforced, and not a radical departure upsetting the distribution of jurisdiction between State and federal courts, for which there is not a vestige of a claim by anybody in the history that led up to the legislation. The article of Mr. Gerdes to which the court below refers seems to leave no doubt as to the limited purpose of making

§ 23 inapplicable. "The bankruptcy provision restricting plenary jurisdiction," he wrote, "has been expressly excluded from application so that the equity receivership jurisdiction over plenary actions which are ancillary to the main proceedings is still available, even though the controversy involves less than $3,000 and even though there is no diversity of citizenship." 52 Harv. L. Rev. 1, 21.[6] Section 23 was eliminated, then, to make clear that when in § 115 of the Act of 1938 Congress gave to the reorganization court equity powers like those which had been conferred in § 77B (a), it authorized the trustee-receiver to bring plenary suits in his home court. Such also is the view of another important witness in the hearings on the Chandler Bill, see Weinstein, The Bankruptcy Law of 1938, pp. 63–64, 193–94. Compare the analysis of the Chandler Act in 11 U. S. C. A. xxx.

This construction gives scope to the provision making § 23 inapplicable in Chapter X proceedings. It is consistent with the policy of the whole Bankruptcy Act, and gives effect to the grant of equity powers to the reorganization court. On the other hand, nothing in the policy of the Chandler Act, in its language, in its history, or in any other factor relevant to its construction, justifies a

---

[6] The discussion in bankruptcy literature of the effect of the provision eliminating § 23 is not only meager but ambiguous. Conflicting arguments can be drawn by giving variant meanings to language susceptible of them, but this only serves to indicate that on such tenuous materials ought not to be based a reversal of jurisdictional policy of far-reaching import.

It is worthy of note that Mr. Gerdes in his article cites as the effect of the elimination of § 23 only the clarification of the jurisdiction of the reorganization court itself over plenary suits. He does not note any expansion of the jurisdiction of the other district courts although, under § 77B, when § 23 was not made expressly inapplicable, it had been his view that other district courts would have plenary jurisdiction as ancillary to the receivership jurisdiction of the reorganization court. See 2 Gerdes, Corporate Reorganization, 1480, 1513–14.

finding that Congress, by implication and indirection, without comment or discussion, changed the meaning which this Court had given to its legislation for fifty years, and expanded a federal jurisdiction which is already overburdened and which Congress has tended to contract; that it upset the relation between federal and State courts which demands that, even in bankruptcy, claims created by State law be litigated in local courts, applying local law under local rules of procedure and trial practice, "to the greater economy and convenience of litigants and witnesses."

11. This decision overturns the analysis which has guided the Court in construing the distribution of jurisdiction between the federal and State courts which Congress devised by the Bankruptcy Act of 1898, and attributes to the Act of 1938 a big change in this distribution, although there is not a glimmer of a hint in its entire legislative history that Congress was aware that it was doing so. Important shifts in jurisdiction ought to be the product of something more persuasive than what is made to appear as a fit of Congressional absent-mindedness. It ought not to be deemed natural that Congress took from the State courts long-established jurisdiction and transferred it to the federal courts, when there is nothing to indicate that Congress wanted to do so or knew that it was doing it.

When Congress has not, by plain language, extended the jurisdiction of the district courts which are the feeders of the Circuit Courts of Appeals and of this Court, an unexpressed purpose to swell the dockets of the federal judiciary ought not to be attributed to Congress by considering in isolation the desirability of allowing a particular class of litigation to be brought in a federal court. Any advantage of giving jurisdiction to the federal courts must be balanced against the disadvantages of taking away from the State courts causes of action rooted in State law.

And in considering the advantages of absorption by the federal courts of jurisdiction theretofore vested in the State courts, it should be our special concern to be mindful that the district courts are part of a single judicial system. Increase in the scope of the business of the district courts inevitably reflects itself in the business of the Circuit Courts of Appeals and of this Court. It is a truism, but vital to keep in mind, that increase in the quantity of the Court's business affects the quality of its work.[7]

Where Congress has clearly enlarged the jurisdiction of the district courts, it cannot be withheld no matter what the effect upon the dockets. But where Congress has not manifested its purpose with clarity—more particularly, where such purpose is derived by way of elaborate argu-

[7] If the Court works under too much pressure, because of the excessive volume of its business, the process of study and reflection indispensable for wise judgment is bound to suffer. Before he became its head, but speaking from close acquaintance with the work of the Court, Chief Justice Taft gave warning that if this Court's business "is to increase with the growth of the country, it will be swamped with its burden, the work which it does will, because of haste, not be of the high quality that it ought to have . . . ." Taft, *Attacks on the Courts and Legal Procedure* (1916) 5 Ky. L. J. No. 2, p. 18. As is well known, it was largely through the leadership of Chief Justice Taft that the Judiciary Act of February 13, 1925, 43 Stat. 936, was passed to enable the Court to keep its business within manageable limits by cutting off the flow of litigation at its various sources. The total number of petitions for certiorari is the most significant index of the Court's business. In the 1927 Term, the first Term during which the influence of the Act of 1925 was fully operative, the total number of such petitions was 587. In the 1946 Term, through June 9, 1947, 1,144 such petitions were considered. Since most of the petitions come from the lower federal courts, any enlargement of their jurisdiction is inevitably reflected in attempts to review those courts here. If it be suggested that the volume of business that will flow from the new head of jurisdiction established by this decision is in itself not likely to be very heavy, it is pertinent to say that it is true of the Court's business also that many a mickle makes a muckle.

682

mentation—resolution of jurisdictional doubts properly takes into account the strong policy of Congress, expressed through a series of judiciary acts, not to cast burdens upon the federal courts which interfere with the effective discharge of their functions. See, for instance, *American Security & Trust Co.* v. *District of Columbia,* 224 U. S. 491, and *Phillips* v. *United States,* 312 U. S. 246, 250–51. These are considerations that will seem far afield to the issues of this case only if its decision is not related to the workings of the federal judiciary in the light of its history.

