612 F.2d 68
 Fed. Sec. L. Rep. P 97,224, Bankr. L. Rep. P 67,274
Edward S. REDINGTON, as Trustee for the liquidation of the
business of Weis Securities, Inc., and Securities
Investor Protection Corporation,
Plaintiffs- Appellants,
v.
TOUCHE ROSS & CO., Defendant-Appellee.
 Nos. 428, 494, Dockets 77-7183, 77-7186.
 United States Court of Appeals,
Second Circuit.
 Submitted Dec. 4, 1979.
Decided Dec. 11, 1979.
 
 Hughes, Hubbard & Reed, New York City (James B. Kobak, Jr., John W. Schwartz and Melinda J. Roberts, New York City, of counsel), for plaintiff-appellant Edward S. Redington, as Trustee for the liquidation of the business of Weis Securities, Inc.
 Rosenman, Colin, Freund, Lewis & Cohen, New York City (Arnold I. Roth, Arthur S. Linker, and Alan L. Doochin, New York City, of counsel), for defendant-appellee Touche Ross & Co.
 Before LUMBARD, MULLIGAN and TIMBERS, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 This case presents us with the task of reconciling the jurisdictional provisions of the Securities Investor Protection Act ("SIPA") of 1970, 15 U.S.C. § 78aaa Et seq.,[1] and the Bankruptcy Act, as amended, in the context of an attempt by the Trustee of a brokerage house in SIPA liquidation to maintain in federal court a suit for negligence, malpractice, breach of warranty and breach of contract against a nondiverse accounting firm, Touche Ross & Co. We conclude that § 23 of the Bankruptcy Act,[2] 11 U.S.C. § 46, precludes the exercise of federal jurisdiction over such a "plenary" suit in a SIPA proceeding, in the absence of any source of federal jurisdiction outside SIPA itself and those provisions of the Bankruptcy Act incorporated by SIPA.[3]
 
 
 2
 The Supreme Court, in Touche Ross & Co. v. Redington, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), reversed our decision[4] to allow the Trustee to maintain a private right of action for violations of § 17 of the Securities and Exchange Act of 1934 and remanded the case to us for a decision on the Trustee's alternative bases for jurisdiction, which are grounded in various provisions of SIPA and the Bankruptcy Act. No non-Bankruptcy Act, non-SIPA source of jurisdiction is alleged. The parties have filed additional briefs; we proceed to determine the remaining jurisdictional questions.[5]
 
 
 3
 As stated more fully in our prior opinion, reported at 592 F.2d 617 (1978), the SIPA Trustee of Weis Securities Inc., a New York brokerage firm, seeks to recover $65 million in damages from the firm's accountants, alleging that their failure to discover fraudulent entries in the firm's books in the 1972 audit led to the firm's failure in 1973.
 
 
 4
 On remand, the Trustee urges that the federal courts are invested with "plenary" jurisdiction to hear such a suit as part of the powers conferred on a federal court supervising a broker liquidation under SIPA. Section 5(b)(2), 15 U.S.C. § 78eee(b)(2) of SIPA is undoubtedly a jurisdictional provision, and it provides that:
 
 
 5
 Upon the filing of an application (for a SIPA liquidation), the court to which application is made shall have exclusive jurisdiction of the debtor involved and its property wherever located With the powers, to the extent consistent with the purposes of this chapter, of a court of bankruptcy and of a court in a proceeding under chapter X of the Bankruptcy Act. (Emphasis added).
 
 
 6
 This sentence contains no fewer than three jurisdictional grants. First, the court is given the "summary" jurisdiction exercised by bankruptcy courts by the phrase "exclusive jurisdiction of the debtor involved and its property wherever located." Second, the SIPA court is given the powers of a federal court supervising a "straight" bankruptcy proceeding under chapters I-VII, and, third, the powers of a court supervising a reorganization under chapter X. Both these latter grants are circumscribed, significantly, by the proviso that limits the SIPA court's quasi-chapter I-VII powers and quasi-chapter X powers to those "consistent with the purposes" of SIPA itself.
 
 
 7
 Although the line between "summary" and "plenary" jurisdiction is not always drawn with clarity in case law, it is clear that a suit of this kind requires "plenary" jurisdiction, absent consent of the parties. Williams v. Austrian, 331 U.S. 642, 67 S.Ct. 1443, 91 L.Ed. 1718 (1947). Therefore the first grant of jurisdiction in § 5(b)(2) of the 1970 Act will not suffice. The second jurisdictional grant picks up all the provisions of chapters I-VII, including § 23 of the Bankruptcy Act, 11 U.S.C. § 46, which withdraws jurisdiction from a "straight" bankruptcy court in cases which could not have been brought in federal court without resort to bankruptcy jurisdiction and which are not subject to summary jurisdiction. The third jurisdictional grant incorporates the provisions of chapter X, including § 102 of the Bankruptcy Act, 11 U.S.C. § 502, which eliminates from reorganization proceedings the restriction contained in § 23. Thus the jurisdictional language of § 5(b)(2) of SIPA refers us to two inconsistent jurisdictional provisions. It is clear that our resolution must depend on our answer to the question of which jurisdictional outcome is more "consistent with the purposes" of SIPA.
 
 
 8
 Fortunately, Congress supplied an unequivocal, if somewhat involved, answer to this question in § 6(c)(1) of SIPA, 15 U.S.C. § 78fff(c)(1), which reads in pertinent part:
 
 
 9
 Except as inconsistent with the provisions of this chapter and except that in no event shall a plan of reorganization be formulated, a liquidation proceeding shall be conducted in accordance with, and As though it were being conducted under, the provisions of chapter X and such of the provisions . . . of chapters I to VII inclusive, of the Bankruptcy Act as section (502 of Title 11) would make applicable if an order of the court had been entered directing that bankruptcy be proceeded with Pursuant to the provisions of such chapters I to VII . . . . (Emphasis added)
 
 
 10
 It is 11 U.S.C. § 502 that gives the chapter X court power to hear "plenary" suits that would be barred by 11 U.S.C. § 46 in "straight" bankruptcies. But § 502 also provides that the restrictions of 11 U.S.C. § 46 will come back into play once an order is entered directly that bankruptcy be proceeded with (in other words, that the attempt to reorganize the corporation be abandoned and a liquidation be accomplished).
 
 
 11
 Congress' clear purpose in writing § 6(c)(1) of SIPA in the manner chosen was to structure SIPA liquidations, insofar as the SIPA court's powers with regard to jurisdiction and procedure are concerned, on the model of a chapter X court which has entered an order directing that bankruptcy be proceeded with. Thus, § 6(c)(1) gives SIPA liquidation courts the procedural and jurisdictional powers conferred on a chapter X court with three significant variations:
 
 
 12
 First, no reorganization plan may be formulated;
 
 
 13
 Second, the provisions of chapters I through VII apply only insofar as they are consistent with the provisions of chapter X (because § 6(c)(1) picks up all of chapter X except those sections named in 11 U.S.C. § 502; and among the provisions of chapter X thus incorporated is the remainder of 11 U.S.C. § 502 itself, which includes a clause incorporating into chapter X all those provisions of chapters I through VII not inconsistent with chapter X);
 
 
 14
 Third, those sections named in 11 U.S.C. § 502 apply in SIPA liquidations Even if they are inconsistent with chapter X (these are 11 U.S.C. §§ 46, 93(h) and (n), 104 and 110(f)).
 
 
 15
 What sort of a portmanteau court did Congress intend to create by these interlocking layers of incorporation by reference? Apparently Congress intended to give a SIPA court the additional procedural flexibility and powers of estate administration enjoyed by a chapter X court its ability to "bring its authority to bear on customers, other creditors and any persons involved in the proceeding, in various situations not permissible in ordinary bankruptcy under chapters I to VII." 3 Collier on Bankruptcy, § 60.82 at 1236 (rev. 14th ed. 1977). Yet this had to be done in a context in which the raison d'etre of chapter X, reorganization, was prohibited, and thus a context in which some features of the expanded jurisdiction of a chapter X court, such as its power to hear plenary suits, might not be desirable. One such element Congress apparently considered undesirable was the power of a chapter X court under § 502 to hear cases arising between trustees and third party "strangers to the bankruptcy" who hold adversely property sought by the trustee.
 
 
 16
 The Trustee makes two major objections to this reading of the statute. First, he argues that any inferred limitation on the quasi-chapter X court powers of a SIPA court found in § 6(c)(1) is inconsistent with § 5(b)(2), and thus rendered inoperative by the "(e)xcept as inconsistent with the provisions of this chapter" clause with which § 6(c)(1) begins. The answer to this point is simply that § 5(b)(2) also contains a clause limiting its application to those features consistent with the rest of the chapter, and in order to prevent an unending mirror-image sequence of references we must decide which section is to be given primacy. It seems to us that it was in § 6(c)(1) that Congress addressed the question of which, and to what extent, provisions of the Bankruptcy Act were to apply in SIPA liquidations, and that the Congressional vision is sketched in considerable detail. Section 6(c)(1) gives courts a well-defined guidepost by which they can decide what is and is not consistent with the Act. Section 5(b)(2), by contrast, is too broad to be such a guidepost, since the characteristics of a court of bankruptcy and of a chapter X court are in some respects incompatible. Therefore, it is appropriate to use the content of another section to define the meaning of § 5(b)(2).
 
 
 17
 The Trustee's second statutory construction argument is that § 6(c)(1) is applicable only in "proceedings" and should not be used to settle jurisdictional questions. This is another way of saying that § 5(b)(2), as the prime fount of jurisdiction in the Act, should take precedence over any provisions elsewhere in the Act with which it seems in conflict. This argument can be answered by pointing out that § 5(b)(2) clearly contemplates that other, non-jurisdictional sections will be used to define jurisdictional limits.[6]
 
 
 18
 Of course, the broader purposes of SIPA deserve consideration, over and above the intricacies of statutory construction. We can find no support for the contention that the policies behind SIPA require that this suit be heard only by the court supervising the SIPA liquidation, or by a federal as opposed to a state court. The factual issues in a negligence suit against the accountants do not necessarily bear any relation to the factual issues involved in a SIPA proceeding, and there is little likelihood that legal issues will overlap. Nor is there any risk of inconsistent determinations. Finally, the Supreme Court has indicated that the federal securities laws, of which SIPA is a part, should not be used to transform essentially state causes of action into federal causes of action, absent clear Congressional intent to effect such a transformation. See Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).
 
 
 19
 The Trustee also argues that by filing proofs of claim for accounting services in the liquidation proceeding Touche Ross submitted to the jurisdiction of the bankruptcy court, and that this submission constituted sufficient consent to restore the jurisdiction, taken away by 11 U.S.C. § 46, to hear suits which could not have been brought in the first instance. 11 U.S.C. § 46(b) does allow "plenary" jurisdiction to be conferred by consent of the parties. However, the act of filing a proof of claim is not the kind of submission that courts have accepted in the past as constituting voluntary submission under 11 U.S.C. § 46(b), at least absent a closer nexus than is present here between the Trustee's claim and the claim filed.[7]
 
 
 20
 The dismissal of the complaint by the district court is affirmed.
 
 
 
 [1]
 Excerpts from and references to the provisions of SIPA throughout this opinion are to the text of the Act prior to the changes wrought by the SIPA Amendments of 1978 and the Bankruptcy Reform Act of 1979. In 1978, Congress amended SIPA, Section 7, Pub.L. 95-283, May 21, 1978, 92 Stat. 254, to "eliminate the wholesale incorporation of Chapter X of the Bankruptcy Act," Sen.Rep. No. 95-763, 3 U.S.Code Cong. & Admin.News (1978) at 764, 774, "in favor of a specific incorporation of certain Chapter X provisions." Id. at 773. The Senate Report includes the somewhat confusing statement that "the elimination of the wholesale incorporation of Chapter X provisions is not in any way intended to limit the jurisdiction of a court under SIPA." Id. We need not decide, however, to what extent, if any, the 1978 amendments affected the jurisdiction of SIPA courts. This suit was commenced on April 30, 1976, more than two years before passage of the 1978 amendments, and the amendments do not purport to withdraw jurisdiction in pending suits. Thus in this decision we have interpreted the court's jurisdiction as it existed prior to the 1978 amendments
 
 
 [2]
 This case was commenced before the effective date of the revised Bankruptcy Code, and thus remains governed by former Title 11, United States Code, whose provisions are quoted and referred to throughout the opinion. Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, § 403, 92 Stat. 2683
 
 
 [3]
 Of course, our conclusion will not prejudice the Trustee's right to maintain suit in state court, where he has previously filed suit in order to preserve his rights in this case
 
 
 [4]
 Redington v. Touche Ross & Co., 592 F.2d 617 (2nd Cir. 1978), with Mulligan, J., dissenting
 
 
 [5]
 As the facts and arguments are adequately presented in the briefs, oral argument would not have significantly advanced the decisional process and did not seem necessary to the panel. See Rule 34(g)(1)(iii) of the rules of this court
 
 
 [6]
 We need not reach the question of whether § 115 of the Bankruptcy Act, 11 U.S.C. § 515, is itself jurisdictional. Any jurisdiction provided by § 115 would come into SIPA via the same route as the other jurisdictional sections discussed above. Thus, the provisions of §§ 5(b)(2) and 6(c)(1) of SIPA, which we have held to exclude any suit that would be excluded by the operation of 11 U.S.C. § 46, would for the same reasons operate to negate any jurisdictional basis derived from § 115
 
 
 [7]
 Before concluding that a party has consented to the exercise of plenary jurisdiction, courts have required such indicia of consent as a general appearance and consent, Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (1934); or explicit concession of jurisdiction, Tilton v. Model Taxi Corp., 112 F.2d 86, 88 (2d Cir. 1940)
 Were the Trustee's claim against Touche Ross a compulsory counterclaim against Touche Ross' claim for accounting services in 1973, the more difficult issue of the limits of the jurisdiction provided by Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), would be presented. See 2 Collier on Bankruptcy, P 23.08 at 558 (rev. 14th ed. 1976). But the Trustee's claim here falls short of being compulsory under F.R.C.P. 13(a). Touche Ross' filed claim arose out of accounting services performed in connection with the 1973 audit. The alleged negligence that is the gravamen of the Trustee's suit occurred in relation to the 1972 audit. While it may be true that accountants have a continuing duty to correct any errors in prior financial statements, this continuing duty cannot operate to make every one of a firm's subsequent annual audits the same "transaction or occurrence" referred to by F.R.C.P. 13(a).